UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

|  |  |
|---|---|
| LTD MANAGEMENT COMPANY, LLC et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>HOLIDAY HOSPITALITY FRANCHISING, INC. (F/K/A HOLIDAY INNS FRANCHISING, INC.) et al.,<br><br>        Defendants. | Civil Action No. 2:07-cv-00530-RGD-FBS |

**PLAINTIFFS' OPPOSITION TO PERSONAL
JURISDICTION MOTION OF INTERCONTINENTAL HOTELS GROUP, PLC**

Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
ARNOLD & PORTER LLP
1600 Tysons Boulevard
Suite 900
McLean, VA  22102-4865
Main:  703.720.7000
Direct:  703.720.7030
Facsimile:  703.720.7399
Email:  Randall.Miller@aporter.com
Email:  Nicholas.Depalma@aporter.com
*Counsel for Plaintiffs LTD Management Company,
LLC and Lake Wright Hospitality, LLC*

Dated:  February 4, 2008

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF APPLICABLE FACTS .......................................................... 2

I.      PLC IS A GLOBAL CONGLOMERATE WITH MORE HOTEL ROOMS
        THAN ANY OTHER COMPANY IN THE WORLD ................................ 2

II.     PLC'S WEBSITE PROMOTES MORE THAN ONE HUNDRED HOTELS
        LOCATED IN VIRGINIA ......................................................................... 4

III.    HOTEL GUESTS CAN RESERVE A VIRGINIA HOTEL ON -- AND
        WITHOUT LEAVING -- PLC'S WEBSITE ............................................. 4

IV.     PLC WARNS INVESTORS THAT PLC MAY BE SUED BY FRANCHISEES
        IN THE UNITED STATES ........................................................................ 4

V.      ALL DEFENDANTS USE THE IDENTICAL TRADE NAME TO ESTABLISH
        A UNIFIED IDENTIFY ............................................................................ 5

VI.     THE OTHER DEFENDANTS ARE NOT INDEPENDENT; PLC MAKES ALL
        MAJOR DECISIONS, SUCH AS THE ABANDONMENT OF SELECT ...... 6

VII.    PLC DIRECTLY COMMUNICATES WITH PLAINTIFFS REGARDING THE
        HOTEL IN QUESTION ............................................................................ 7

VIII.   PETER GOWERS IS A PLC OFFICER ................................................... 7

ARGUMENT ...................................................................................................... 8

I.      STANDARD OF REVIEW ...................................................................... 8

II.     THE COURT HAS JURISDICTION OVER PLC UNDER VIRGINIA'S LONG-
        ARM STATUTE ....................................................................................... 8

III.    PLC IS SUBJECT TO GENERAL JURISDICTION ................................ 9

        A.      PLC Has Continuous and Systematic Virginia Contacts ................ 9

        B.      PLC's Use of a U.S. Distribution System Is Not a Defense ........... 10

        C.      Defendants' Use of a Common Trade Name To Establish a Single
                Marketplace Identity Supports General Jurisdiction ....................... 11

        D.      PLC's Control over the U.S. System Supports General Jurisdiction ... 12

IV.     PLC IS SUBJECT TO SPECIFIC JURISDICTION .................................. 12

A.    PLC Has Purposefully Availed Itself of Virginia ................................................. 12

B.    PLC's Direct Emails to Plaintiffs Support Specific Jurisdiction .......................... 12

C.    PLC's Decisions Involving Select Support Specific Jurisdiction......................... 13

V.    ALTERNATIVELY, THE COURT SHOULD PERMIT JURISDICTIONAL
      DISCOVERY............................................................................................................... 14

CONCLUSION...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*,
   560 S.E.2d 246 (Va. 2002)....................................................................12

*Agency Rent-A-Car Sys., Inc. v. Grand Rent-A-Car Corp.*,
   98 F.3d 25 (2d Cir. 1996) ....................................................................13

*Bullion v. Gillespie*,
   895 F.2d 213 (5th Cir. 1990) ...............................................................13

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................12

*Crinkley v. Holiday Inns, Inc.*,
   844 F.2d 156 (4th Cir. 1988) ...............................................................12

*D'Addario v. Geller*,
   264 F. Supp. 2d 367 (E.D. Va. 2003) ....................................................9

*Gerber Garmet Tech., Inc. v. Lectra Sys., Inc.*,
   699 F. Supp. 1576 (N.D. Ga. 1988) .....................................................11

*Hartford Cas. Ins. Co. v. JR Marketing, LLC*,
   511 F. Supp. 2d 644 (E.D. Va. 2007) ..............................................8, 9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408, (1984)) .................................................................9, 10, 12

*Holiday Hospitality Franchising, Inc. v. 174 WestStreet Corp.*,
   No. 1105-CV-1419-TWT, 2006 WL 2466819 (N.D. Ga. Aug. 22, 2006) (Docket
   No. 11-3)................................................................................................3

*IP Innovation, L.L.C. v. RealNetworks, Inc.*,
   310 F. Supp. 2d 1209 (W.D. Wash. 2004)............................................12

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................9

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984)..............................................................................12

*LG Elecs., Inc. v. Asustek Computers*,
   126 F. Supp. 2d 414 (E.D. Va. 2000) ..................................................12

*LSI Indus., Inc. v. Hubbell Lighting, Inc.*,
  232 F.3d 1369 (Fed. Cir. 2000)..................................................................................9

*Mass. Inst. of Tech. v. Micron Tech., Inc.*,
  508 F. Supp. 2d 112 (D. Mass. 2007) ......................................................................10

*Oakley, Inc. v. Jofa AB*,
  287 F. Supp. 2d 1111 (C.D. Cal. 2003) ...................................................................12

*Org, Ltd. v. Nartron Corp.*,
  No. 06-500, 2006 WL 2583626 (W.D. Pa. Sept. 7, 2006)......................................10

*Reynolds Metals Co. v. FMALI, Inc.*,
  862 F.Supp. 1496 (E.D. Va. 1994) ...........................................................................9

*Ruston Gas Turbines, Inc., v. Donaldson Co.*,
  9 F.3d 415 (5th Cir. 1993) .......................................................................................13

*Safer Display Tech., LTD v. Tatung Co.*,
  227 F.R.D. 435 (E.D. Va. 2004) ..............................................................................14

*Selman v. Am. Sports Underwriters, Inc.*,
  697 F. Supp. 225 (W.D. Va. 1988) ..........................................................................14

*Stokes v. L. Geismar, S.A.*,
  815 F. Supp. 904 (E.D. Va. 1993) ................................................................1, 10, 11

*Taltwell, LLC v. Zonet USA Corp.*,
  No. 3:07cv543, 2007 WL 4562874 (E.D. Va. Dec. 20, 2007) ..................................8

*Weight v. Kawasaki Motors Corp., U.S.A.*,
  604 F. Supp. 968 (E.D. Va. 1985) ......................................................................10, 13

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980).....................................................................................................9

**STATUTES**

Va. Code § 8.01-328(A)(1)...........................................................................................8

Va. Code § 8.01-328(A)(3)...........................................................................................8

**RULES**

Rule 12(b)(2)  ........................................................................................................8, 14

**MISCELLANEOUS**

5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1351
(3d ed. 2004) ....................................................................................................14

Barbara De Lollis, *Holiday Inn chain gives itself a face-lift*, USA TODAY July 20, 2007,
at 1B .................................................................................................................6

Mort Aronson, *Impact Issues Still Pose Challenges For Hotel Industry; Franchise Law*,
219 Hotel & Motel Mgmt. 1 (May 17, 2004)…………………………………..6

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

| | |
|---|---|
| LTD MANAGEMENT COMPANY, LLC et al., <br><br> Plaintiffs, <br><br> v. <br><br> HOLIDAY HOSPITALITY FRANCHISING, INC. (F/K/A HOLIDAY INNS FRANCHISING, INC.) et al., <br><br> Defendants. | Civil Action No. 2:07-cv-00530-RGD-FBS |

## PLAINTIFFS' OPPOSITION TO PERSONAL
## JURISDICTION MOTION OF INTERCONTINENTAL HOTELS GROUP, PLC

Plaintiffs LTD Management Company, LLC and Lake Wright Hospitality, LLC (together "LTD") respectfully file this memorandum in opposition to the motion to dismiss of Defendant InterContinental Hotels Group, PLC ("PLC").

## INTRODUCTION

By its own admission, PLC is the largest hotel company in the world -- with a half million hotel rooms in nearly 100 countries.  It is the parent of the other two Defendants in this case (Holiday Hospitality Franchising Inc. and Six Continents Hotels, Inc).  PLC calls the shots for the global strategy for several well-known brands, including the "Holiday Inn" empire.  Yet PLC's brief suggests that it does not participate in the hotel business and therefore is immune from suit.  This characterization contradicts PLC's own published statements as well as its actions -- such as sending emails directly to Plaintiffs' Norfolk hotel.  Further, PLC operates and

profits from a reservation system where anyone in the world can book a Virginia hotel and complete the sale without leaving PLC's website.

No significant decision affecting the Holiday Inn brands -- such as the abandonment and denigration of the "Select" subbrand -- can occur except on PLC's orders and at its direction. Given the degree of control PLC has over its brands and its direct connections to this case, it is fair, reasonable, and foreseeable for PLC to be haled into this Court. Indeed, PLC's public filings expressly warn investors of the risk that PLC itself may be sued in the United States by franchisees -- for both contract and non-contract claims. PLC also franchises thousands of hotel rooms in Virginia and derives substantial revenues therefrom. It thus would offend traditional notions of fair play and substantial justice *not* to subject PLC to suit in Virginia. After reaping the benefits of doing business in this Commonwealth for so long, PLC should not now complain about the burden of defending itself here, and its personal jurisdiction motion should be rejected.

## STATEMENT OF APPLICABLE FACTS

The following facts are taken principally from PLC's public statements in its annual reports, security filings, and website.

## I.   PLC IS A GLOBAL CONGLOMERATE WITH MORE HOTEL ROOMS THAN ANY OTHER COMPANY IN THE WORLD

1.     PLC is a publicly traded company in the United Kingdom and is also traded in the United States using American Depository Receipts on the New York Stock Exchange. PLC's brands include InterContinental, Crowne Plaza, Hotel Indigo, Holiday Inn, Holiday Inn Express, Staybridge Suites, Candlewood Suites, and prior to its abandonment, Holiday Inn Select. PLC's website states that it is an "international hotel company" that owns over "7 hotel brands, [with]

over 120 million stays per year, almost 572,000 rooms and over 3,800 hotels across nearly 100 countries." DePalma Ex. 1 (www.ihgplc.com); Compl. ¶ 5.

2.      PLC describes itself as a "worldwide owner, manager and franchisor of hotels and resorts." DePalma Ex. 2 (Form 20-F p. 16). PLC has "more guest rooms than any other hotel company in the world." DePalma Ex. 1 (website excerpt).[1]

3.      Although it has worldwide hotel operations, PLC is "most dependent on the Americas for operating profit . . . . In terms of its continuing operating profit before central overhead and other operating income and expenses, the Americas represented 77% . . . ." DePalma Ex. 2 (Form 20-F at 36); 24 (65% of all IHG branded hotels are in North America, compared to 25% in Europe); 39 ("The key profit producing region is the United States.").

4.      Defendants Holiday Hospitality Franchising, Inc., and Six Continents Hotels, Inc., are wholly owned subsidiaries of PLC. Compl. ¶¶ 5-6; Defs.' Rule 7.1 Disclosure (Docket No. 13). One of Defendants' court filings from a different case, which Defendants submitted in this case, indicates that PLC's subsidiaries pay approximately 95% of their profits to PLC. *See Holiday Hospitality Franchising, Inc. v. 174 WestStreet Corp.*, No. 1105-CV-1419-TWT, 2006 WL 2466819, at *8 (N.D. Ga. Aug. 22, 2006) (Docket No. 11-3).

5.      PLC's "growth strategy depends on its success in identifying, securing and retaining management and franchise agreements" with franchisees such as LTD. PLC depends upon fees paid by these franchisees, including for the "majority of IHG's sales and marketing expenditure." DePalma Ex. 2 (Form 20-F at 32).

---

[1] Plaintiffs further note that PLC identifies itself, not any other entity, as the brand owner in its Form 20-F. *See* DePalma Ex. 2 (Form 20-F at 19) ("IHG owns a number of hotel brands . . . ."); *see also id.* at 4 (defining "IHG" as "InterContinental Hotels Group, PLC"). *Compare* Chitty Decl. ¶ 11 ("PLC does not own hotel brand names.").

-3-

## II.   PLC'S WEBSITE PROMOTES MORE THAN ONE HUNDRED HOTELS LOCATED IN VIRGINIA

6.      PLC has more than 100 hotels in Virginia, and those hotels offer thousands of

guest rooms to Virginia residents and visitors.  *See* DePalma Ex. 1 (examples of screen shots

from www.ihgplc.com, obtained by selecting "Find a hotel" and entering "VA" for State).  For

example, PLC has thirty Virginia hotels servicing Alexandria, VA alone.  DePalma Ex. 1 (screen

shots from www.ihgplc.com found by entering "Alexandria" for City/Town).

## III.   HOTEL GUESTS CAN RESERVE A VIRGINIA HOTEL ON -- AND WITHOUT LEAVING -- PLC'S WEBSITE

7.      A Virginia resident need go no further than PLC's website to reserve one of the

thousands of Intercontinental-branded hotel rooms in Virginia.  Any consumer, including

Virginia residents and those traveling to Virginia, can click on PLC's website and a new window

will open up with an identical "IHG" logo, signature PLC orange trade dress, and PLC slogan

("The World's Hotel Company").  The reservation can be consummated without leaving the PLC

website.  DePalma Ex. 1 (making reservation at the Holiday Inn Hotel and Suites in Alexandria,

VA); *see also* Form 20-F at 32 (the reservation "system immediately confirms reservations or

indicates alternative accommodation available within IHG's network.  Confirmations are

transmitted electronically to the hotel for which the reservation is made.").

## IV.   PLC WARNS INVESTORS THAT PLC MAY BE SUED BY FRANCHISEES IN THE UNITED STATES

8.      PLC recognizes that it is "at risk of litigation from . . . franchisees and/or the

owners of hotels. . . for breach of its contractual or other duties."  DePalma Ex. 2 (Form 20-F at

15).  "Claims filed in the United States may include requests for punitive as well as

compensatory damages."  *Id.*  In fact, PLC is often sued in the United States.[2]

## V.   ALL DEFENDANTS USE THE IDENTICAL TRADE NAME TO ESTABLISH A UNIFIED IDENTIFY

9.      All three Defendants use the "InterContinental Hotel Group" trade name.

DePalma Ex. 2 (Form 20-F at 4) ("'Group' refers to InterContinental Hotels Group PLC and its

subsidiaries")); Compl. ¶ 7 ("The Defendants in this case use the trade name "InterContinental

Hotel Group" in business operations in the United States, [and] logos and names appear on

correspondence described in this case.").

10.      Individuals described in the Complaint, including Lester Adams, Jenny Tidwell,

and Michael Horgan "indicated that they had authorization and permission to use the

InterContinental Hotels Group trade name and that they acted as authorized representatives" of

PLC.  Compl. ¶ 7.

11.      For example, the correspondence referred to in the Complaint that was sent to

Plaintiffs and attached to Plaintiff's first opposition brief have a large logo on the front top right

corner of each letter that states "INTERCONTINENTAL HOTELS GROUP."  At the bottom of

these documents, a far less prominent logo a fraction of the size of the main logo states "Six

Continents Hotels, Inc., A Member of the InterContinental Hotels Group."  Pls.' First Opp'n

(Docket No. 23) (Exhibits 1-6).

---

[2] *See, e.g.*, *United Tours Corp. v. Crowne Plaza Englewood aka InterContinental Hotels Group PLC*, Case No 07-603018 (N.Y. Sup. Ct. filed Sept. 10, 2007); *Cohen v. InterContinental Hotels Group PLC*, Case No. L 3701-07 JC (N.J. Super. Ct. filed Aug. 24, 2007); *CMDL Corp. v. InterContinental Hotels Group PLC*, Case No. 07-51369 (Bankr. DE. filed May 24, 2007); *D'Amato v. InterContinental Hotels Group PLC*, Case No. 9:06-CV-03201 (D. S.C. filed Nov. 13, 2006).

## VI.   THE OTHER DEFENDANTS ARE NOT INDEPENDENT; PLC MAKES ALL MAJOR DECISIONS, SUCH AS THE ABANDONMENT OF SELECT

12.     Using PLC's trade name and being a "Member" of its conglomerate means acting at PLC's direction, according to PLC's global strategy.  For example, PLC announces initiatives and directs its subsidiaries to undertake them.  *See* DePalma Ex. 2, (Form 20-F at 26) ("During 2006, IHG initiated a number of research projects, the results of which will strengthen the Group's strategy with respect to brand development, franchising operations and growth opportunities."); at 35 ("IHG recognized the need for [Holiday Inn Express] in the early 1990s and subsequently developed Holiday Inn Express to extend the reach of the Holiday Inn brand."); DePalma Decl. Ex. 3, Barbara De Lollis, *Holiday Inn chain gives itself a face-lift*, USA TODAY July 20, 2007, at 1B (stating that the "London-based InterContinental Hotels Group, current owner of the brand . . . is in the process of shedding roughly half the nearly 1,100 properties it had in 2004, mainly by ending franchise agreements"); Ex. 1 (PLC press releases) ("IHG announces a worldwide relaunch of the Holiday Inn brand family, comprising Holiday Inn, Express by Holiday Inn and Holiday Inn Express.").

13.     PLC coordinates its activities with its wholly owned subsidiaries, including regarding the ownership, management, leasing, and franchising of its hotel properties in the United States.  Compl. ¶ 8.

14.     PLC directs the impact policy.  PLC officer Kirk Kinsell has commented that the impact policy at issue in this case (Compl. ¶¶ 47-76) is "integral" to the franchise relationship. *See* Mort Aronson, *Impact Issues Still Pose Challenges For Hotel Industry; Franchise Law*, 219 Hotel & Motel Mgmt. 1, 46 (May 17, 2004) (quoting Kirk Kinsell) (attached as Exhibit 7 to Pls.' First Opp'n (Docket No. 23)); DePalma Ex. 4 (PLC press release) (identifying Kinsell as a member of PLC's Executive Committee).

-6-

## VII.   PLC <u>DIRECTLY COMMUNICATES WITH PLAINTIFFS</u> REGARDING THE HOTEL IN QUESTION

15.     PLC sends emails directly to LTD involving matters of hotel management and even in matters as day-to-day as discounts for NATO employees.  Green Decl. (attaching examples of emails sent directly from PLC to Plaintiffs' hotel at issue in this case).

16.     The Green Declaration contradicts the Chitty declaration.  *Compare* Chitty Decl. at ¶ 21 ("PLC has not directed any phone calls, facsimiles, or e-mail communications to Plaintiffs in Virginia, and has not attended any meetings in Virginia with Plaintiffs.").

17.     PLC's "management meets with owners of IHG branded hotels on a regular basis."  DePalma Ex. 2, Form 20-F at 41.  PLC further markets itself to potential franchisees like LTD on its website, encouraging them to contact PLC's representatives and employees in the United States.  DePalma Ex. 1 (excerpts from www.ihgplc.com from clicking "Hotel Development" then "Find Out More").

## VIII.   PETER GOWERS IS A PLC OFFICER

18.     Peter Gowers, who is discussed in paragraphs 41-43 of the Complaint, is employed and has been employed by PLC at all times relevant hereto.  PLC's Form 20-F states "The directors and officers of InterContinental Hotels Group PLC as at March 16, 2007 are . . . Peter Gowers."  PLC's website also lists Gowers as "Chief Executive" of PLC's Asia Pacific region, previously PLC's "Chief Marketing Officer."  DePalma Ex. 4 (PLC press release); *see also id.* (discussing promotion of Gowers and Kinsell as "two key appointments from ***within the company***") (emphasis added); DePalma Ex. 5 (excerpt from PLC's Interim Report 2007) ("In July, we announced two senior executive appointments" including Gowers.)  This contradicts the Chitty declaration.  See Chitty Decl. ¶ 27 ("Peter Gowers, identified in the Complaint, is not an officer, director or employee of PLC.").

## ARGUMENT

### I.   STANDARD OF REVIEW

When personal jurisdiction is challenged under Rule 12(b)(2) in advance of discovery, a plaintiff need only make a *prima facie* showing that jurisdiction exists. *Hartford Cas. Ins. Co. v. JR Marketing, LLC*, 511 F. Supp. 2d 644, 647 (E.D. Va. 2007). "The Court may rely on the pleadings and affidavits of both parties, but all factual inconsistencies are to be construed in the light most favorable to plaintiff." *Taltwell, LLC v. Zonet USA Corp.*, No. 3:07cv543, 2007 WL 4562874, at *3 (E.D. Va. Dec. 20, 2007) (citations and quotations omitted).

### II.   THE COURT HAS JURISDICTION OVER PLC UNDER VIRGINIA'S LONG-ARM STATUTE

PLC is subject to jurisdiction under Virginia's long-arm statute, which authorizes personal jurisdiction over entities that (1) transact business in Virginia, Va Code § 8.01-328(A)(1); and (2) cause tortious injury by an act or omission, Va. Code § 8.01-328(A)(3).  PLC meets both prongs.  *See* Applicable Facts ¶ 6 (PLC's agents operate more than 200 hotels in Virginia, and PLC derives substantial profits therefrom); Compl. ¶¶ 6, 20-28, 36 (PLC caused false or misleading statements to be made regarding PLC's commitment toward the Holiday Inn Select brand, and LTD relied on these statements to its detriment).[3]

As PLC's brief states, the long-arm statute broadly "extends to the outer limits of due process," Motion at 4, and therefore personal jurisdiction can be evaluated by evaluating whether it is fair and reasonable that PLC be subject to suit in Virginia under due process principles.  *See id*. at 4-5.  "Because the Virginia long-arm statute extends the amenability of a non-resident to

---

[3] Discovery may show that subsection (3) of the Code (tortious injury by an act or omission in this Commonwealth) applies to the extent that Plaintiffs can show that the fraudulent statements made within the Commonwealth by Messrs. Busch and Horgan were authorized by PLC such that they can be imputed directly to PLC.

jurisdiction to the outer perimeter allowed by the Due Process Clause, the statutory and constitutional inquiries merge into the question of whether the individual defendants had sufficient minimum contacts with Virginia to satisfy due process." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 378 (E.D. Va. 2003); *see also Reynolds Metals Co. v. FMALI, Inc.,* 862 F. Supp. 1496, 1498 (E.D. Va. 1994).

For the exercise of jurisdiction over PLC to satisfy due process requirements, PLC must have certain minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotations omitted). The minimum contacts must be such that PLC could "reasonably anticipate being haled into court" in Virginia. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The minimum contacts test may be satisfied by either demonstrating (1) general jurisdiction or (2) specific jurisdiction. *Hartford Cas. Ins. Co.*, 511 F. Supp. 2d at 648 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 (1984)).

As demonstrated below, PLC is subject to both types of jurisdiction.

## III.    PLC IS SUBJECT TO GENERAL JURISDICTION

### A.    PLC Has Continuous and Systematic Virginia Contacts

"General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). There is no specific test used to determine whether a defendant's activities are "continuous and systematic"; however, a company's substantial revenue over a number of years and extensive distribution

network in a jurisdiction have been used as a basis for finding general jurisdiction.  *Id.*; *Mass. Inst. of Tech. v. Micron Tech., Inc.*, 508 F. Supp. 2d 112, 121-22 (D. Mass. 2007) (holding that court had general jurisdiction over defendant with $20 million in annual sales and extensive marketing efforts in the forum state); *Org, Ltd. v. Nartron Corp.*, No. 06-500, 2006 WL 2583626, at *2-3 (W.D. Pa. Sept. 7, 2006).  PLC has continuous and systematic contacts in Virginia because it advertises, offers, and profits from thousands of hotel rooms in Virginia. Applicable Facts ¶¶ 6-7.

### B.      PLC's Use of a U.S. Distribution System Is Not a Defense

PLC's brief seeks to avoid general jurisdiction by suggesting that Defendant Six Continents is solely responsible for PLC's U.S. hotel operation, that PLC's interest is indirect, and that there is no basis to pierce the corporate veil.  However, federal courts will attribute a subsidiary's contacts to a parent corporation even where the subsidiary is not "a fictitious shield-an alter ego-erected . . . solely to shield itself from liability."  *Stokes v. L. Geismar, S.A.*, 815 F. Supp. 904, 907 (E.D. Va. 1993).  "The fact that a foreign parent . . . conducts its marketing and distribution in the United States through an independent distribution system does not shield it from *in personam* jurisdiction."  *Id.* at 906 (citing *Weight v. Kawasaki Motors Corp.*, 604 F. Supp. 968, 971 (E.D. Va. 1985)).

In *Stokes*, the district court found that the foreign parent corporation had purposefully availed itself of the United States, including Virginia, through its subsidiary:

> In this case, Geismar did, to a great extent, create, control and
> employ the distribution system that brought its product to Virginia.
> Its United States distribution was handled exclusively by Modern
> Track, its wholly owned subsidiary.  While it does not appear that
> Modern Track is a fictitious shield-an alter ego-erected by Geismar
> solely to shield itself from liability, Geismar exerts a sufficient
> amount of control over Modern Track, and the distribution of its

-10-

products through that entity, to be purposefully availing itself of the U.S. market. There is no evidence of any attempt on the part of either Geismar or Modern Track to limit their U.S. marketing strategy to avoid Virginia or any other particular state. Instead, it appears that Geismar, through Modern Track, aggressively and willingly sold to entities located throughout the United States, including Virginia, thereby purposefully availing itself of Virginia, as well as other states', markets. Geismar should not be permitted to distribute its products throughout the United States, but at the same time shield itself from liability by acting through a subsidiary, especially when the entities are headed by the same individuals and have such overlapping operations.

*Id.* at 907.

Here, PLC:  (1) appears to receive **95%** of the profits of its U.S. subsidiaries;  (2) holds itself out to the public as an active franchise manager (DePalma Ex. 5 (PLC Interim Report 2007) (discussing room counts, operating profits, and revenues by brand)); (3) directed the abandonment of "Select" (Compl. ¶ 42 (quoting Peter Gowers' statement that "there is no need for the Holiday Inn Select sub-brand distinction because Holiday Inn Express already gave customers everything they needed")); and (4) manages the "impact policy" used throughout the system (Applicable Facts ¶ 14).  PLC thus purposefully avails itself of the Virginia market through its subsidiaries such that personal jurisdiction is proper.

### C.   Defendants' Use of a Common Trade Name To Establish a Single Marketplace Identity Supports General Jurisdiction

The use by all Defendants of the identical trade name ("InterContinental Hotels Group") to present a unified entity to the market also supports the existence of general jurisdiction.  For example, in *Gerber Garmet Tech., Inc. v. Lectra Sys., Inc.*, 699 F. Supp. 1576, 1581 (N.D. Ga. 1988), the court found jurisdiction over a French parent corporation where the parent participated in marketing in the forum, had mutually exclusive arrangements between it and its subsidiary and made an effort to "***present a single identity to the marketplace***."  *Id.* (emphasis added).

-11-

### D.     PLC's Control over the U.S. System Supports General Jurisdiction

Many other cases have found jurisdiction over foreign parents that interlock marketing

programs or direct products to markets by placing them into the stream of commerce through

their subsidiaries.  These cases hold that a "subsidiary company's contacts with the forum state

may be imputed to the parent company where the subsidiary was established for, or is engaged

in, activities that the parent would have to undertake if not for the subsidiary's involvement." *IP

Innovation, L.L.C. v. RealNetworks*, *Inc.,* 310 F. Supp. 2d 1209, 1213 (W.D. Wash. 2004);

*Oakley, Inc. v. Jofa AB*, 287 F. Supp. 2d 1111, 1116 (C.D. Cal. 2003); *LG Elecs., Inc. v. Asustek

Computers*, 126 F. Supp. 2d 414, 420 (E.D. Va. 2000).[4]

## IV.    PLC IS SUBJECT TO SPECIFIC JURISDICTION

### A.     PLC Has Purposefully Availed Itself of Virginia

This Court also may exercise specific personal jurisdiction over PLC because PLC "has

'purposefully directed' [its] activities at residents of the forum" and the litigation relates to those

activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (quoting *Keeton v.

Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v.

Hall*, 466 U.S. 408, 414 (1984)).

### B.     PLC's Direct Emails to Plaintiffs Support Specific Jurisdiction

Here, Plaintiffs provided examples where PLC deliberately sent emails directly to

Plaintiffs' hotel and those emails relate to Plaintiffs' Holiday Inn franchise.  *See* Green Decl.

---

[4] *See also Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 166 (4th Cir. 1988) (applying North
Carolina law) ("though no actual agency exists, a party may be held to be the agent of another on
the basis that he has been held out by the other to be so in a way that reasonably induces reliance
on the appearances").  *See also Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P.*, 560
S.E.2d 246, 249-50 (Va. 2002) ("the power of control is an important factor to consider" and that
"agency may be inferred from the conduct of the parties and from the surrounding facts and
circumstances") (citation omitted).

(attaching emails).  These emails demonstrate that PLC has directed e-mail communications to Plaintiffs in Virginia, and that beyond participating in the day-to-day management of its subsidiaries, PLC actually participates in the management and oversight of its Virginia franchisees.  This is another disputed fact that must be taken in Plaintiffs' favor.  *Compare* Chitty Decl. ¶¶ 6 ("PLC does not do business in the United States"); 9 ("PLC does not engage in any business activities in Virginia").

Given the primacy of electronic communication in today's marketplace, such emails alone, without any physical presence in the forum state, can be enough to constitute purposeful availment.  *See Ruston Gas Turbines, Inc., v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993); *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990) ("It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil."); *Agency Rent-A-Car Sys., Inc. v. Grand Rent-A-Car Corp.*, 98 F.3d 25, 30-31 (2d Cir. 1996).  The purposefulness of PLC's emails further ensures that PLC's appearance as a party in this Court is not "random."  *See Weight v. Kawasaki Motors Corp.*, *U.S.A.*, 604 F. Supp. 968, 971 (E.D. Va. 1985).

### C.    PLC's Decisions Involving Select Support Specific Jurisdiction

PLC drives InterContinental Hotels Group's brand decisions, including marketing and whether to expand or discontinue certain brands.  Applicable Facts ¶¶ 12-14.  The representations made concerning Select (Compl. ¶¶ 20-27), including representations made in Virginia, were made at the behest of PLC, and based on PLC's corporate strategy.  PLC, not Six Continents or Holiday Hospitality Franchising, Inc., announced that InterContinental would abandon Select and otherwise overhaul the Holiday Inn System.  Compl. at ¶¶ 41-46.  PLC, and not its subsidiaries, developed the competing Express line.  *See* Applicable Facts at ¶ 12.  And

PLC, along with its subsidiaries, should be subject to this Court's jurisdiction for Plaintiffs'

Virginia injuries stemming directly from misrepresentations about these programs.

## V.   ALTERNATIVELY, THE COURT SHOULD PERMIT JURISDICTIONAL DISCOVERY

In the alternative, the Court should permit Plaintiffs to conduct jurisdictional discovery

before ruling on PLC's Motion.  *See Safer Display Tech., LTD v. Tatung Co.*, 227 F.R.D. 435,

439-40 (E.D. Va. 2004) ([C]ourts may hold decisions on Rule 12(b)(2) motions to dismiss for

lack of personal jurisdiction in abeyance and afford an opportunity for jurisdictional discovery")

(citing 5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1351, at

307-08 n.34 (3d ed. 2004)).  *See also id.* ("In some cases, it may even be appropriate for courts to

postpone resolution of a personal jurisdiction objection until completion of a trial on the merits

of the suit, or even to allow a jury to make the determination in fact-intensive cases."); *Selman v.*

*Am. Sports Underwriters, Inc.*, 697 F. Supp. 225 (W.D. Va. 1988) (denying motion to dismiss

based on personal jurisdiction but reserving right to reconsider pending "further discovery").

## **CONCLUSION**

Considering PLC's contacts in Virginia, and construing the pleadings and declarations in the light most favorable to Plaintiffs, the Court should find that Plaintiffs have made their *prima facie* showing of personal jurisdiction.  Accordingly, this Court should deny PLC's Motion to Dismiss for Lack of Personal Jurisdiction.

Respectfully submitted,

_____/s/_____
Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
ARNOLD & PORTER LLP
1600 Tysons Boulevard
Suite 900
McLean, VA  22102-4865
Main:  703.720.7000
Direct:  703.720.7030
Facsimile:  703.720.7399
Email:  Randall.Miller@aporter.com
Email:  Nicholas.Depalma@aporter.com
*Counsel for Plaintiffs LTD Management Company,*
*LLC and Lake Wright Hospitality, LLC*

Dated:  February 4, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of February, 2008, I have caused the foregoing

Opposition to Motion to Dismiss to be filed with the Court using the CM/ECF system, which

will send an electronic notice to counsel registered with that system, and I have also served, via

electronic transmission, a copy upon the following:

> Robert M. Tata
> Hunton & Williams LLP
> 500 East Main Street, Suite 1000
> Norfolk, VA  23510-3889
> Email:  btata@hunton.com
> *Counsel for Defendant Holiday Hospitality Franchising, Inc. (f/k/a Holiday Inns Franchising, Inc.)*

_____/s/_____
Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
ARNOLD & PORTER LLP
1600 Tysons Boulevard
Suite 900
McLean, VA  22102-4865
Main:  703.720.7000
Direct:  703.720.7030
Facsimile:  703.720.7399
Email:  Randall.Miller@aporter.com
Email:  Nicholas.Depalma@aporter.com
*Counsel for Plaintiffs LTD Management Company, LLC and Lake Wright Hospitality, LLC*
