UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

```
┌─────────────────────────────────┐
│            FILED                │
│  ┌───────────────────────────┐  │
│  │      AUG 2 0 2009          │  │
│  │                           │  │
│  └───────────────────────────┘  │
│  CLERK, U.S. DISTRICT COURT     │
│        NORFOLK. VA              │
└─────────────────────────────────┘
```

LAKE WRIGHT HOSPITALITY, LLC,

        Plaintiff,

v.

HOLIDAY HOSPITALITY
FRANCHISING, INC.,

INTERCONTINENTAL HOTELS
GROUP PLC, and

SIX CONTINENTS HOTELS, INC.,

        Defendants.

Civil Action No. 2:07cv530

## OPINION AND ORDER

Currently before the court are the parties' objections to the March 2, 2009 Report and

Recommendation (the "R&R") filed by United States Magistrate Judge Tommy E. Miller

(Docket Nos. 161 and 162). By Order dated October 17, 2008 (Docket No. 86) and Amended

Order dated October 23, 2008 (Docket No. 92), Senior United States District Judge Robert G.

Doumar, to whom this matter was previously assigned, referred defendants' motion for summary

judgment (Docket No. 80) to Magistrate Judge Miller for Report and Recommendation pursuant

to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the

reasons stated herein, this court **OVERRULES** plaintiff's objections to the R&R, **ACCEPTS**

the findings of fact and conclusions of law of the R&R, **DENIES** plaintiff's Motion to Strike

Summary Judgment Reply or, in the Alternative, for Permission to File Surreply (Docket No.

125), **GRANTS IN PART** defendants' Motion and Incorporated Memorandum to Preclude

Plaintiff from Using Depositions Taken in Violation of Court Order (Docket No. 134),

**GRANTS** defendants' motion for summary judgment, and **DENIES** all other pending motions in

this case **AS MOOT**.  The court also finds that, pursuant to the provisions of the parties' License

Agreement, defendants are entitled to recover their attorney's fees for defending this litigation,

and **ORDERS** defendants to submit their fee request by motion as detailed below.  Pursuant to

the further recommendation of the R&R, the court also finds that sanctions against plaintiff's

counsel are appropriate.  The court will impose such sanctions as it deems necessary and

appropriate in a separate final Order and Judgment that will issue after the court has determined

the amount of the attorney's fee award.

## PROCEDURAL HISTORY

The factual background and extensive procedural history of this case, as well as the

standard for summary judgment, are fully set forth in the R&R, and need not be reiterated herein.

Magistrate Judge Miller concluded in the R&R that defendants' motion for summary judgment

should be granted, effectively rendering moot all other pending motions in the case.  Magistrate

Judge Miller also recommended that defendants be awarded their attorney's fees pursuant to the

terms of their License Agreement with plaintiff, and further recommended the imposition of

additional sanctions on plaintiff's counsel for the extensive mischaracterizations, unsupported

contentions, argument, and outright misrepresentations contained in plaintiff's purported

"Counterstatement of Undisputed Facts and Disputed Items in Defendants' Statement of Facts"

(the "counterstatement") in its Opposition to Motion for Summary Judgment ("Opp'n").[1] See R&R App'x A; Opp'n at 5–28.

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party was advised by copy of the R&R of the right to file written objections to the findings and recommendations of Magistrate Judge Miller. See R&R at 29. On March 13, 2009, defendants filed their objections to the R&R (Docket No. 164), agreeing generally with its conclusions, but nevertheless seeking to preserve for any subsequent appeal their alternative arguments in support of summary judgment, including their statute of limitations and merger clause arguments. On March 30, 2009, plaintiff filed a response to defendants' objections (Docket No. 186) as well as its own set of objections to the R&R (Docket Nos. 182 and 185), which attacks at considerable length virtually every factual finding and conclusion of law in the R&R. Plaintiff asserts that the R&R failed to adhere to the proper summary judgment standard, and instead "credit[ed] defense inferences, [took] on the role of the jury by weighing evidence and making credibility determinations, and ultimately flip[ped] the Rule 56 burden by requiring Lake Wright to present undisputed facts." Objections of Lake Wright, Arnold & Porter LLP, Randall K. Miller, and Nicholas M. DePalma to March 2, 2009 Magistrate Judge's Report and Recommendations ("Pl.'s Objections") at 2. Plaintiff then

---

[1] The court notes that the version of plaintiff's opposition considered by the R&R was, in fact, a *corrected* version of that opposition, which previously had contained even more errors. This issue was the subject of prior motions and orders by Magistrate Judge Miller and Senior District Judge Doumar. See Lake Wright's [original] Opposition to Motion for Summary Judgment (Docket No. 103); Lake Wright's Motion and Memorandum to File Corrected Opposition to Summary Judgment (Docket No. 123); Magistrate Judge Miller's Order dated November 21, 2008 (Docket No. 132; denying plaintiff's motion for leave to file its corrected opposition); Lake Wright's Objections to the November 21, 2008 Order (Docket No. 140); and plaintiff's Notice of Filing of Corrected Opposition to Summary Judgment Pursuant to January 15, 2009 Court Order (Docket No. 151). Senior District Judge Doumar required plaintiff's counsel to limit proposed corrections to those necessary to fix actual errors in the original.

effectively reargues, in serial fashion, the merit of each of its causes of action.  Plaintiff also argues that the R&R improperly suppressed material evidence.  With respect to the issue of attorney's fees, plaintiff argues that any award of such fees is barred because defendants did not move the court or otherwise ask for them in their pleadings.  With respect to the issue of sanctions, plaintiff argues that its counterstatement of undisputed facts was supported by the record of the case and entirely appropriate in its characterizations in light of the fraud claims that lie at the core of this case.  On April 20, 2009, defendants filed a response to plaintiff's objections (Docket No. 198).  On May 29, 2009, the case was reassigned to this court.

On July 1, 2009, this court held a hearing, originally scheduled to take place before Senior District Judge Doumar, on the parties' objections to Magistrate Judge Miller's R&R and the issue of sanctions against plaintiff's counsel.  After the court had heard oral argument on the objections to the R&R, counsel for plaintiff's counsel (*i.e.*, separate counsel retained to represent plaintiff's counsel on the issue of sanctions) sought to address, in serial fashion, every one of the dozens of paragraphs in plaintiff's counterstatement that the R&R found to be improper.  In lieu of such a lengthy monologue, the court permitted counsel simply to submit to the court at the hearing its extensive written outline of its arguments regarding the counterstatement ("Pl.'s Sanctions Brief," Docket No. 213), and afforded defendants' counsel fourteen days and an equal number of pages to respond.  On July 15, 2009, defendants filed their response ("Defs.' Sanctions Reply," Docket No. 212).

## STANDARD OF REVIEW

When reviewing a magistrate judge's report and recommendation, a district court must make a *de novo* determination of those portions of the R&R to which objections are made.  Fed.

R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). The district court is authorized to accept, reject or

modify, in whole or in part, the findings and recommendations made by the magistrate judge.

Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).

With regard to the R&R's specific recommendation that this court impose sanctions on

plaintiff's counsel, Rule 11(c)(1) of the Federal Rules of Civil Procedure provides:

> If, after notice and a reasonable opportunity to respond, the court determines that
> Rule 11(b) has been violated, the court may impose an appropriate sanction on
> any attorney, law firm, or party that violated the rule or is responsible for the
> violation. Absent exceptional circumstances, a law firm must be held jointly
> responsible for a violation committed by its partner, associate, or employee.

Fed. R. Civ. P. 11(c)(1). Rule 11(b) provides in relevant part that "[b]y presenting to the court a

pleading, written motion, or other paper—whether by signing, filing, submitting, or later

advocating it—an attorney . . . certifies that to the best of the person's knowledge, information,

and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions

have evidentiary support." Fed. R. Civ. P. 11(b). Rule 11(c)(3) provides that a court may, acting

*sua sponte*, "order an attorney, law firm, or party to show cause why conduct specifically

described in the order has not violated Rule 11(b)."[2]

---

[2] In this case, although defendants highlighted many errors and alleged misrepresentations
in plaintiff's counterstatement in Exhibit 25 to their Reply Brief in Support of Motion for
Summary Judgment (Docket No. 105; "Reply"), they did not separately move this court for
sanctions pursuant to Rule 11(c)(2). Instead, the R&R recommended sanctions *sua sponte*, and
defendants, in subsequent filings, have echoed that recommendation. Although it does not
appear that the R&R explicitly ordered plaintiff's counsel "to show cause" pursuant to Rule
11(c)(3), the R&R did describe in detail the specific passages in the counterstatement that it
considered to have violated Rule 11(b), and both plaintiff's counsel and counsel for plaintiff's
counsel were clearly afforded ample opportunity to respond. It is also clear from subsequent
Orders entered by Senior District Judge Doumar prior to the reassignment of this case to this
court (see, e.g., Order dated March 31, 2009, Docket No. 187), as well as the subsequent filings
and oral argument by the parties at the July 1, 2009 hearing before this court, that the issue of
sanctions has now been fully addressed by all parties and is ripe for decision by this court.

To determine if a motion or pleading violates Rule 11(b)(3), a court must determine if the attorney or party filing the motion or pleading conducted an objectively reasonable investigation of the factual basis for his or her claim before filing. Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991) (citing Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984, 987 (4th Cir. 1987)); In re Kunstler, 914 F.2d 505, 514 (4th Cir. 1990); Fed. R. Civ. P. 11(b). To meet this standard, a "prefiling factual investigation must uncover some information to support the allegations in the complaint." Brubaker, 943 F.2d 1363 at 1373. When a court imposes sanctions *sua sponte*, the "court is obligated to use extra care" in doing so. Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 151 (4th Cir. 2002). A sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

## ANALYSIS

### I.   Defendants' Motion for Summary Judgment

The court will first address the R&R's conclusions with respect to the undisputed material facts upon which defendants' motion for summary judgment was predicated. The court will then address in turn each of the causes of action alleged by plaintiff in this case.

#### A.   *The R&R Did Not Err by Adopting Defendants' Statement of Material Facts as Undisputed*

Local Civil Rule 56 of the Local Rules of this court provides in relevant part:

Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated

and citing the parts of the record relied on to support the facts alleged to be in dispute.  In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Local Civ. R. 56(B).  Defendants complied with these requirements in their brief in support of their motion for summary judgment.  See Defendants' Brief in Support of Summary Judgment ("Mot. Mem.") at 1–23.  Plaintiff, however, did not comply with the requirements applicable to its opposition, or even with the expanded 40-page limit granted by Magistrate Judge Miller's October 28, 2008 Agreed Order.  Instead, plaintiff set forth its own counterstatement in the 40-page body of its opposition, and then included—purportedly "[f]or ease of reference," but also, conveniently, in excess of the page limit—a separate "summary of disputed facts" indexed to the numbered paragraphs of defendants' list of undisputed facts as Exhibit 1 to its opposition. See Opp'n at 5–28; Ex. 1 at 1.

As discussed in detail in the R&R and Appendix A thereto, and as this court discusses in greater detail below, plaintiff's counterstatement contains literally dozens of paragraphs that are (A) argument, which has no place in the facts section of an opposition, (B) factual contentions unsupported by citations to record evidence, in violation of this court's Local Civil Rule 56(B), (C) misleading statements, and (D) outright misrepresentations.  Plaintiff's summary of disputed facts is also tainted by the fact that most of its entries do not cite directly to record evidence, but instead cross-reference plaintiff's flawed counterstatement, which hardly achieves plaintiff's purported goal of "easing reference."  Moreover, as noted by the R&R, many entries do not even cite to a specific paragraph or handful of paragraphs of plaintiff's counterstatement, but instead to absurdly great swaths of it.  See, e.g., Opp'n Ex. 1 at ¶¶ 19 (citing, inter alia, "Facts ¶¶ 5–50"),

7

20–21 (same), 23–25 (citing only "Facts ¶¶ 10–50"), 28 (same), 29 (citing, *inter alia*, "Facts ¶¶ 10–55"), 37–42 (citing only "Facts ¶¶ 85–99"), 44 (same), 46 (same), 48 (same), 50–51 (same), 54 (same), 68 (citing only "Facts ¶¶ 10–50"), 75 (same), 97–128 (citing only "Facts ¶¶ 78–99"), 139 (same). The court further notes, as defendants argued in their Reply, that the vast majority of other citations in plaintiff's summary are not to deposition transcripts, documentary evidence, or other record evidence revealed in the course of discovery in the case, but instead to the accompanying tailor-made declarations of plaintiff's own senior managers, Haribhai Thakkar and Dilip Desai.[3]

These flaws in plaintiff's opposition do not merely make it difficult to decipher the portions of defendants' list of undisputed facts to which plaintiff objects, or plaintiff's evidentiary basis for such objections; instead, as the R&R noted, "the majority of references fail to dispute the identified portions of Defendants' facts." R&R at 3. On that basis, the R&R concluded that "Plaintiff has not effectively disputed Defendants' List of Undisputed Facts," and consequently "adopt[ed] each of Defendants' facts that Plaintiff has not effectively disputed." Id. The R&R also "refuse[d] to adopt each of Plaintiff's 'undisputed' facts that were either argument, unsupported, misleading, or misrepresented." Id.

---

[3] The court also notes that, in the absence of other corroborating record evidence, such self-serving declarations or affidavits do not suffice to allow a party to defeat summary judgment. See, e.g., Cleveland v. Policy Mgmt. Systems Corp., 526 U.S. 795, 806 (1999) ("a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity"); Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e) of the Federal Rules of Civil Procedure] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit").

8

This court agrees with the R&R's conclusions in this respect. In submitting its flawed counterstatement and summary, plaintiff violated the agreed page limit as well as the substantive requirements of this court's Local Civil Rule 56 for controverting defendants' undisputed facts, and thus failed to controvert defendants' list of undisputed material facts. Consequently, in considering the motion for summary judgment, the Magistrate Judge was expressly authorized to "assume that facts identified by the moving party in its listing of material facts are admitted." E.D. Va. Local Civ. R. 56(B). This court finds no reason to reach a contrary result in this respect.

These characteristics of plaintiff's opposition are particularly egregious examples of a tendency—or perhaps even a conscious litigation strategy—apparently exhibited by plaintiff's counsel throughout the course of this litigation: an unyielding devotion to its somewhat bizarre fraud theories, regardless of what the facts found in the course of discovery showed the true course of events to be. As noted by defendants and the R&R, the United States Supreme Court has recently observed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Such is the case here and, as discussed in greater detail below with regard to the issue of sanctions, the court cannot help but conclude that plaintiff's tendency in this regard overstepped the permissible bounds of zealous advocacy. For all of these reasons, the court finds that the R&R did not err in adopting defendants' list of undisputed facts and refusing to adopt plaintiff's counterstatement and summary of disputed facts. Consequently, this court will adopt the R&R's Statement of Facts and incorporate it herein by reference.

9

**B.      *The R&R Did Not Err in Recommending Summary Judgment on Plaintiff's***
         ***Fraud Claims (Count I)***

At the core of plaintiff's case lies its somewhat bizarre theory that defendants duped

plaintiff in late 2000 into opening its hotel under the Holiday Inn Select ("HISL") brand name,[4]

even though defendants had already secretly decided in 1998 or 1999 to "kill" the brand.

Plaintiff claims that defendants then strung it and other HISL franchisees along for years, until

defendants officially decided in March 2006 to cease sales of new HISL franchises, in order to

take advantage of the positive "halo" effect that HISL's premium reputation had on consumer

perceptions of defendants' core Holiday Inn brand.  Plaintiff claims that this was done at the

expense of HISL franchisees, who were unaware that defendants had no long-term interest in

establishing HISL as a profitable, self-sustaining brand within the Holiday Inn family.

The record of this case appears to be devoid of evidence to support plaintiff's fraud

theory.  Indeed, despite the grandiose proportions of that theory, its purported evidentiary basis

consists of little more than two email chains from 1998 and a 2002 slide presentation, none of

which, as discussed in greater detail below, in any way supports a claim of fraud or any other

wrongdoing.  See Opp'n Exs. 7, 16 & 17.  Instead, the record evidence in this case tells a fairly

straightforward story of a brand that never quite managed to attract enough franchisees to

become self-sustaining, *despite* defendants' ongoing efforts and expenditures.  However, the

infirmity of plaintiff's fraud case is equally manifest in the fact that, even using as a factual

---

[4] This court agrees with the R&R's conclusion that the parties' uses of various terms such
as "brand," "brand extension," "sub-brand," "product line," or "line extension" to describe the
status of HISL within the Holiday Inn family of hotels do not implicate any fact material to
plaintiff's claims; indeed, the terms are used interchangeably by employees of both parties.  See
R&R at 13 n.11 and accompanying text.  For ease of reference, this court will refer to HISL as a
Holiday Inn "brand."

predicate its deeply flawed counterstatement, the fraud theories advanced by plaintiff in this case

verge on the frivolous. To reach this conclusion, the court hardly needs to look further than the

actual list of statements alleged by plaintiff to be fraudulent. See R&R at 12. None of these

statements could possibly be regarded, under a clear and convincing standard or, indeed, under

any evidentiary standard, as a false representation of a material fact upon which anyone could

rely to his or her actual detriment. See, e.g., Evaluation Research Corp. v. Alequin, 439 S.E.2d

387, 390 (Va. 1994) (discussing the requisite elements of a fraud claim).

The R&R correctly notes that Holiday Inn property inspector Robert Bush's comment in

July 2000 to Mr. Desai that plaintiff "should consider converting" its hotel to the HISL brand, on

its very face, is not even a factual statement. This court agrees with the R&R's straightforward

analysis of the other allegedly fraudulent statements made by Mr. Bush and Holiday Inn franchise

sales representative Michael Horgan, and with the R&R's conclusion that, on the basis of the

record evidence before the court, all of the statements were either true at the time they were made

or expressions of opinion that, as a matter of law, are not actionable as fraud. This court also

agrees with the R&R's analysis and conclusion that plaintiff's fraudulent concealment theories

are not only wholly unsupported but, in fact, contradicted by the record evidence in this case.

Moreover, as the R&R further notes, plaintiff is bound by the fact that it made no reference in its

court-ordered responses to defendants' interrogatories to defendants' Uniform Franchise Offering

Circular ("UFOC") for the HISL brand as a source of fraud, and even if it had properly raised

such a claim, the UFOC contains no representations that the record evidence in this case suggests

to be false. Accordingly, it could not serve as a basis for any fraud claim by plaintiff even if

plaintiff had properly alleged such a claim.

As noted above, the record evidence in this case tells a fairly straightforward story. Defendants launched the HISL brand in 1994, and dozens of HISL hotels opened in the following few years. The brand's expansion hit something of a plateau in the late 1990s; nevertheless, in October of 2000, when plaintiff agreed to open its hotel as a HISL, over 70 such hotels were in operation. Over the years, defendants launched several advertising campaigns and promotions specifically in support of the HISL brand, including in 1998, 2000 (in partnership with online financial services company E-Trade), and 2003 (in *The Wall Street Journal*). Despite these advertising efforts, the number of HISL franchises continued to grow at a very slow rate in the early 2000s, peaking at between 90 and 100 hotels. Defendants attempted to implement new strategies for the brand in 2004 and 2005, the latter of which failed to garner the support of more than a handful of HISL franchisees (the "franchisees"). During this period of time, defendants also commissioned a comprehensive brand study, which concluded that there was insufficient room in the market to differentiate effectively between HISL and the core Holiday Inn brand, the reputation of which defendants were also trying to improve. Ultimately, defendants decided in early 2006 to cease efforts at HISL-specific marketing, and gave franchisees the option to remain HISL hotels for the remainder of their franchise terms or convert to another of defendants' brands (*e.g.*, a step down to a regular Holiday Inn or a step up to a Crowne Plaza), with defendants at least partially subsidizing the cost of conversion. It appears from a recent review of the HISL website, which continues to be maintained by defendants, that approximately three dozen hotels continue to operate today under the HISL brand name, approximately a half dozen have converted to Crowne Plazas, nearly twenty have converted to regular Holiday Inns (using the new Holiday Inn logo on their signs) and approximately a half dozen no longer appear to be in

12

operation as Holiday Inns. See http://www.hiselect.com (list of links to individual hotels located under Locations tab).

Defendants emphatically argue that, plaintiff's allegations in this case notwithstanding, plaintiff's HISL hotel has been extremely successful and profitable. See Mot. Mem. at 3; Defendants' Response to Objections of Lake Wright et al. ("Defs.' Resp. to Objections," Docket No. 198) at n.5 and accompanying text. Plaintiff's own manager, Mr. Desai, admitted that its HISL hotel in Norfolk commands a higher room rate than a regular Holiday Inn. See, e.g., Defs.' Resp. to Objections at 15. Herein lies the fundamental flaw in plaintiff's theory that defendants created HISL as a "halo" to burnish the reputation of the core Holiday Inn brand at the expense of HISL franchisees. Plaintiff seeks to compare HISL to Ralph Lauren's ultra high-end Purple Label line of clothing, which according to plaintiff was created by the designer not as an actual product to be sold or profited from in its own right, but instead purely as a marketing device to enhance, on its coattails, the prestige of the designer's less-expensive clothing lines. See Opp'n at 32. The record of this case belies any such comparison. Although it appears clear from the evidence that defendants did intend HISL to yield reputational benefits to the core Holiday Inn brand, HISL hotels were not merely marketing devices; they were real, functioning hotels that sought to cater to the needs of business travelers. This case does not allege that individual HISL hotels failed to attract guests or yield revenues to their franchisees or defendants; indeed, the evidence shows precisely the opposite, that HISL accounted for a substantial portion of defendants' revenues for many years. Plaintiff's own HISL hotel continues to be extraordinarily successful. Instead, as noted above, the simple reality underlying this case is that, despite

defendants' protracted efforts, the HISL brand failed to attract enough HISL *franchisees* to make it viable in the long term. There is simply no fraud to be found in this case.

**C.** **The R&R Did Not Err in Recommending Summary Judgment on Plaintiff's Breach of Contract Claims (Count IV)**

The R&R provides a succinct analysis of the provisions of the License Agreement allegedly breached by defendants and concludes that the provisions, by their very terms, clearly do not require or prohibit, respectively, the omissions or conduct that plaintiff claims as the bases of its breach of contract claims. In light of the clear, straightforward nature of the contractual provisions at issue, this court's analysis would not differ from the R&R's in any material respect. Accordingly, this court accepts the R&R's analysis and conclusions with respect to Count IV of plaintiff's amended complaint.

**D.** **The R&R Did Not Err in Recommending Summary Judgment on Plaintiff's Claim for Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)**

Plaintiff claims that a variety of actions allegedly taken by defendants violated the implied covenant of good faith and fair dealing. However, the R&R explains that under Georgia law, which governs plaintiff's contract claims pursuant to Senior District Judge Doumar's March 11, 2008 Order, conduct expressly contemplated or authorized by a contract cannot be held to constitute a breach of the implied covenant of good faith and fair dealing. See R&R at 23–24. As discussed in the R&R, since the terms of the License Agreement at issue in this case expressly give defendants full discretion to eliminate the HISL brand and to license other hotels at any other location, defendants' decisions with regard to the HISL brand and the approval of a Holiday Inn Express hotel in the vicinity of plaintiff's hotel cannot constitute breaches of the

14

implied covenant. This court accepts the R&R's analysis and conclusions with respect to Count II of plaintiff's amended complaint.

### E. The R&R Did Not Err in Recommending Summary Judgment on Plaintiff's Claim for Alleged Violation of the Virginia Retail Franchising Act (Count III)

Plaintiff claims that defendants' decisions with respect to the HISL brand have unduly influenced plaintiff, inducing it to surrender rights to which it is entitled under the License Agreement, in violation of the Virginia Retail Franchising Act ("VRFA"). However, as noted by the R&R, defendants have explicitly allowed franchisees to continue operating their hotels under the HISL name for the remainder of the terms of their franchise agreements, have continued to provide franchisees with call center support and access to Holiday Inn's centralized HOLIDEX reservation system, and have continued to maintain the HISL website. Plaintiff's primary complaint relates to the fact that defendants have ceased efforts at HISL-specific marketing, and have terminated sales of new HISL franchises, effectively eliminating it from defendants' active roster of hotel brands. However, as explained by the R&R (and accepted by this court) in connection with plaintiff's breach of contract claims, the plain language of the License Agreement explicitly allowed defendants to take these actions. Accordingly, such actions obviously cannot be construed as forcing the surrender of any right plaintiff has under the License Agreement. The court accepts the R&R's analysis and conclusions with respect to Count III of plaintiff's amended complaint.

## II. Attorney's Fees and Sanctions against Plaintiff's Counsel

### A. Award of Attorney's Fees under the License Agreement

Defendants requested in their memorandum in support of their motion for summary judgment (and elsewhere) that the court award them their costs and attorney's fees incurred in

15

defending this action pursuant to the indemnity provision (¶ 9(A)) of the License Agreement. See Mot. Mem. at 40; Reply at 23. The R&R likewise recommended that defendants recover their expenses, including reasonable attorney's fees and court costs, pursuant to ¶ 14(I) of the License Agreement, which covers expenses incurred in enforcing rights under it. See R&R at 27.

Plaintiff argues in its objections to the R&R that defendants are not entitled to attorney's fees because (1) defendants have failed to plead attorney's fees as separate damages under the contract pursuant to Rule 9(g) of the Federal Rules of Civil Procedure, (2) the issue of attorney's fees was not before Magistrate Judge Miller, and thus not within the proper scope of the R&R, and (3) defendants have effectively conceded that attorney's fees are not available under ¶ 14(I) of the License Agreement, since this is not an action in which defendants have had to remedy a default, enforce a right, effect termination, or collect any amounts due under the License Agreement. Pl.'s Objections at 35–37. Defendants argue in response that they, in fact, requested attorney's fees under the License Agreement in their initial disclosures and elicited testimony from plaintiff's management confirming plaintiff's awareness that defendants could recover attorney's fees under the License Agreement. Defs.' Resp. to Objections at 41–42. Defendants also note that they included in their list of undisputed facts in support of summary judgment a factual contention that defendants were, in fact, enforcing a right under the License Agreement in defending this lawsuit, consistent with ¶ 14(I). Id. at 42; see also Mot. Mem. at 23. With respect to the applicability of Rule 9(g), defendants argue that, since an award of fees under these provisions of the License Agreement is contingent upon defendants actually prevailing in their defense of this action, and thereby succeeding in enforcing their rights under the License

16

Agreement, such fees can—and, according to defendants, will—be claimed after the disposition of the case. Id. at 43–44.

The court finds defendants' analysis to be correct. Since both relevant provisions provide for attorney's fees in proceedings in which defendants are enforcing rights under the License Agreement, and the rights are not actually "enforced" until the court has rendered a decision on the claims implicating those rights, defendants are correct to assert that they may wait until the disposition of this case to claim such fees. In light of the undisputed nature of defendants' factual contention that their defense of this lawsuit constitutes enforcement of a right under the License Agreement for purposes of these provisions, this court concludes that an award of attorney's fees pursuant to the License Agreement is properly predicated on the court's grant of summary judgment herein.

**B.    *Sanctions for Specific Paragraphs of Plaintiff's Counterstatement***

As the R&R noted, "[w]ithout an evidentiary hearing addressing reasons for counsel's actions in this case, it is difficult to ascertain whether counsel's presentation of the 'Statement of Facts' in Plaintiff's brief resulted from bad faith, sharp practice, negligence, inadvertence, or incompetence." R&R at 27–28. It is clear from plaintiff's objections to the R&R, lead plaintiff's counsel Randy Miller's statements before this court at the July 1, 2009 hearing, and the 54-page submission of counsel for plaintiff's counsel at that hearing that the contents of plaintiff's counterstatement did not result from inadvertence. Instead, plaintiff's counsel has continued to "stand by" its counterstatement in its entirety, notwithstanding defendants' objections to it and the R&R's extensive critical analysis of it.

17

Needless to say, this court is cognizant that it is not merely good practice, but indeed an affirmative duty of attorneys to advocate zealously on behalf of their clients' interests. The court also acknowledges the argument of plaintiff's counsel that fraud cases often must be predicated on—and pieced together from—limited circumstantial evidentiary bases, because sophisticated perpetrators rarely leave behind "smoking gun" correspondence or documents to be found in the course of discovery. However, it is entirely another matter for a fraud case to be predicated on *contrived* evidence, and that is what at least certain portions of plaintiff's counterstatement appear to be. Plaintiff's counterstatement crosses the line separating contextualized facts and manufactured fiction, and although the court could perhaps chalk up the presence of one or two mis-remembered quotations or aggressive interpretations of documents to zealous advocacy (or inevitable human error), the court simply cannot accept such a justification in the context of dozens of material errors and misstatements contained in plaintiff's counterstatement.

The court has carefully considered Exhibit 25 to defendants' Reply, Appendix A to the R&R, plaintiff's objections to the R&R, defendants' response to plaintiff's objections, the paragraph-by-paragraph response to Appendix A submitted by counsel for plaintiff's counsel at the July 1, 2009 hearing before this court, the response to that submission filed by defendants on July 15, 2009, the additional authority subsequently submitted by counsel for plaintiff's counsel, and defendants' letter in response to that submission. On the basis of these materials, as well as the record of this case as a whole, the court has concluded that sanctions against plaintiff are appropriate with respect to at least certain of the paragraphs of plaintiff's counterstatement criticized by the R&R, which this court finds to have violated Rule 11(b)(3)'s requirement that "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3).

Under cover of letter dated August 3, 2009 (Docket No. 214), counsel for plaintiff's counsel submitted to the court a copy of the very recent decision of the U.S. Court of Appeals for the District of Columbia Circuit in Lucas v. Duncan, No. 07-5264, 2009 WL 2341552 (D.C. Cir. July 31, 2009).  Although Lucas is certainly similar to the instant case in some respects, it is, as defendants noted in their August 5, 2009 response letter (Docket No. 215), "distinguishable in many ways and supports sanctions in others." Id. In Lucas, a U.S. Magistrate Judge imposed sanctions on counsel for purportedly disguising inferences as facts and failing to acknowledge evidence contrary to his factual contentions in his opposition to a motion for summary judgment. See Lucas v. Spellings, 408 F. Supp. 2d 8 (D.D.C. 2006).  The D.C. Circuit vacated the imposition of sanctions, explaining with respect to the Magistrate Judge's first rationale that "[t]here is no basis in the text of Rule 11(b)(3) for the legal proposition that an attorney must separately identify 'fact' and 'inference,'" and that, since the attorney had adhered to the applicable local rules in citing evidentiary support for each factual contention, "there was no hiding of the ball" or "possibility that the reader would be misled." Lucas, 2009 WL 2341552, at *4.  With respect to the Magistrate Judge's second rationale, the D.C. Circuit explained that, although the misleading nature of factual assertions is necessarily context-dependent, Rule 11(b)(3) merely requires there to be *some* "evidentiary support" for contentions. Id. at *6.  The D.C. Circuit also reasoned that, in the context of an opposition to a motion for summary judgment, an attorney need "do no more than set forth facts in contravention of the defendant's claims," and again noted that the omission of contrary evidence could not have been misleading to the reader. Id.

19

As discussed in greater detail below, in this case plaintiff did not merely employ circumstantial evidence to allege facts supported only by inference in its counterstatement. Instead, plaintiff made factual contentions that were not only utterly misleading and unsupported by record evidence but, in some cases, outright misrepresentations. Such conduct clearly exceeds any latitude that might be afforded by the rationale of Lucas. With respect to certain of the paragraphs discussed in Appendix A to the R&R, it appears clear that plaintiff uncovered no information to support its factual contentions, but nevertheless persisted in presenting such contentions as fact, in some cases without citation, and in other cases by citing evidence that actually contradicted such contentions. Plaintiff also continued advocating its dubious fraud theories despite the lack of any factual basis whatsoever. Such conduct by plaintiff's counsel violated Rule 11(b), and merits sanction. See Brubaker, 943 F.2d 1363 at 1373.

The court will address each paragraph in turn. In the interest of judicial economy, and in light of the fact that each of these dozens of paragraphs has already been subject to extensive written analysis, the court will strive to keep its analysis of each as succinct as possible.

**Paragraph 7.** The issues in this paragraph were raised *sua sponte* by the R&R. The central problem with this paragraph lies in plaintiff's use of the words "earmarked" and "required." Plaintiff's characterizations are highly questionable, because it is clear from the face of the License Agreement that defendants are not actually "required" by contractual or other binding obligation to earmark or spend *any* portion of the HISL franchisees' marketing contribution on HISL-specific marketing. See License Agreement ¶ 4(D). Although plaintiff argues at length that various employees of defendants perceived there to be an obligation, or at least a general practice, of spending marketing contributions on brand-specific marketing,

20

plaintiff cannot get around the plain language of the License Agreement itself. Even if, as counsel for plaintiff's counsel argues in its July 1, 2009 submission—see Pl.'s Sanctions Brief at 10—plaintiff merely intended to assert that defendants would have been, purely as a *practical* matter, "required" to spend that kind of money in order to "kick start" HISL, such a reading raises additional problems.

   First, the R&R correctly notes that the "more than $5 million" figure plaintiff alleges is not anywhere mentioned or otherwise supported by the deposition testimony plaintiff cites. This court notes that the original corrected version of plaintiff's opposition rejected by Magistrate Judge Miller and Senior District Judge Doumar sought to change the citation for this figure to Exhibit 16 to the opposition. See Docket No. 123-2 at 7. However, that exhibit does not necessarily support plaintiff's figure, either. In Exhibit 16, an email chain between Holiday Inn executives, HISL brand manager Francie Schulwolf appears to have used the 1997 fiscal year-end Room Revenue figure for U.S. HISL hotels as the basis for a *projection* of the amount of HISL marketing contributions for 1998 and beyond, assuming a 1.5% contribution (*i.e.*, not the 2% alleged by plaintiff, which HISL franchisees had been paying). It is not clear from this exhibit if Ms. Schulwolf's "$5,545,587" figure (1.5% of $369,705,858) in any sense represents an amount that had actually been "provided," as plaintiff alleges, by 2% marketing contributions already paid by HISL franchisees prior to the date of that exhibit.

   The third sentence of paragraph 7 is also misleading. Although the words "kick started" appear in the cited deposition transcript and the "$7.6M" figure appears in the cited document, neither source supports the actual implication of the third sentence. Holiday Inn executive John Merkin's testimony actually was that by "1998, 1999, we would have already had [sic] done

21

whatever early investment we would have done to get [the HISL brand] kick started." Pls. Ex. 4 at 161:24–162:1. Mr. Merkin was not saying, as plaintiff claims, that the "kick starting" of the HISL brand was ramping up in 1998 (when, the court notes, the brand was already four years old), but instead that the "kick starting" was *already done* by that point.

On the basis of the foregoing analysis, this court agrees with the R&R that paragraph 7 of plaintiff's counterstatement is unsupported and should not be adopted. Since this court also concludes that paragraph 7 is misleading, in that it selectively quotes record evidence for propositions that the cited evidence clearly does not support, the court believes that paragraph 7 merits sanction.

**Paragraph 9.** Defendants raised issues with this paragraph in Exhibit 25 to their Reply, correctly noting that there was no evidence of a *plan* to increase HISL-specific marketing to $12–$15 million, and that the document cited by plaintiff for this range (Opp'n Ex. 15) referred not to any planned *budget*, but instead merely to *projected* future HISL marketing *contributions* based on *projected* future HISL revenues over a four-year period (1999–2003). See Reply Ex. 25 at 1. Plaintiff cites nothing to suggest that HISL's revenues (and corresponding marketing contributions) for these years actually grew as projected; indeed, defendants explicitly argue that they did not. See Defs.' Sanctions Reply at 17. Moreover, as noted above, under the plain language of the License Agreement, whatever the actual revenues and marketing contributions in the years 1999–2003 proved to be, defendants were under no obligation during that time or, indeed, at any relevant time, to budget or spend any of the HISL franchisees' marketing contributions on HISL-specific marketing.

22

Plaintiff's justification, premised on its flawed argument in support of paragraph 7 of its counterstatement, is inapposite, because the "commitment" on which plaintiff relies so heavily is flatly contradicted by the plain terms of the License Agreement and, in any case, irrelevant, because HISL (unlike, for example, Crowne Plaza) was not only part of defendants' "System," but, by virtue of its very name, also part of the Holiday Inn brand itself.

On the basis of the foregoing, this court agrees with the R&R that paragraph 9 of plaintiff's counterstatement is baseless and misleading, and should not be adopted by the court. However, since its misleading nature is due not to outright fabrication, but instead to a specious "apples and oranges" comparison based on numbers found in defendants' own documents, this court does not deem it to rise to a level meriting sanction.

**Paragraph 10.** Defendants characterized this paragraph in their Reply as "pure fabrication" and "not supported by the documents or testimony cited." Reply Ex. 25 at 1–2. The parties' primary dispute is over Holiday Inn executive John Chandler's statement in a March 1998 email reply to Ms. Schulwolf that "Select is not a brand and will not be broken off of Holiday Inn as a brand." Opp'n Ex. 16 at 1. Although this statement clearly lies at the core of plaintiff's fraud theory, it simply does not support plaintiff's assertions in this paragraph, let alone a fraud case. This document does not anywhere suggest that defendants even had "plans to establish HISL as a separate and differentiated brand" to begin with. Indeed, as Mr. Chandler continues to explain in the cited exhibit, HISL is simply "a type of Holiday Inn with a specific customer mix and ocaision [sic] driving its standards and positioning within the Holiday Inn brand." Id. In essence, one might say that Ms. Schulwolf was putting the emphasis on the "Select" part of the "Holiday Inn Select" brand name, and Mr. Chandler, in reply, was putting the

23

emphasis on the "Holiday Inn" part of that brand name. Although the court finds plaintiff's characterization of the cited evidence in this paragraph to be questionable, and agrees with the R&R's conclusion that the paragraph is unsupported, the court does not believe that it merits sanction.

**Paragraph 11.** Defendants also characterized this paragraph in their Reply as "pure fabrication," and noted that it contains no citations. Reply Ex. 25 at 2. This paragraph essentially restates the contentions of the paragraph immediately preceding it. The court acknowledges the explanation, offered by counsel for plaintiff's counsel, that this is merely a transitional paragraph, as evidenced by the fact that the following paragraph elaborates on the alleged "decision" that paragraph 10 and this paragraph discuss. See Pl.'s Sanctions Brief at 17. Although the court agrees with the R&R's conclusion that paragraph 11 fails to controvert anything in defendants' list of undisputed facts, the court does not believe that it merits sanction.

**Paragraph 12i.** Defendants' Reply claimed that this paragraph "skews the facts." Reply Ex. 25 at 2. Counsel for plaintiff's counsel explains that plaintiff arrived at the 90% figure for defendants' alleged "slashing" of the marketing budget by comparing the actual budget amounts listed in defendants' response to plaintiff's interrogatories with the projected marketing contributions listed in Exhibit 15 to the opposition. See Pl.'s Sanctions Brief at 19. In so doing, plaintiff engaged in essentially the same "apples and oranges" comparison as it did in paragraph 9. For substantially the same reasons as those discussed above with respect to that paragraph, the court finds this paragraph to be baseless and misleading, and will not adopt it, but does not believe that it rises to a level meriting sanction.

**Paragraph 12iii.** Defendants argued that plaintiff's claim that "[s]ales of new HISL franchises were halted" is false, noting that the number of HISL franchises continued to grow, albeit slowly, after 1999, reaching between 90 and 100 hotels at its peak. See Reply Ex. 25 at 3. The R&R concludes that the use of "halted" is misleading, because the cited evidence in no way suggests that defendants affirmatively halted sales of new HISL franchises. R&R at 32. Counsel for plaintiff's counsel concedes that the document it cites for this proposition does not, in fact, say that sales were halted, but instead merely observes that "the HISL system growth has been limited," but argues that since "sales in fact stopped . . . the word 'halted' is an appropriate description of this evidence." Pl.'s Sanctions Brief at 20.

Although, at first glance, this issue might appear to be splitting hairs semantically, the context in which this paragraph appears clearly makes it misleading. Paragraph 12 purports to detail the "eight core components" of defendants' "decision" to "kill HISL to feed" the core Holiday Inn brand. See Opp'n at 7. In other words, the sub-paragraphs of 12 clearly purport to describe *affirmative acts by defendants* with respect to HISL, and cannot now be dismissed by counsel for plaintiff's counsel as mere passive observations about the actual state of affairs at a particular point in time. The court cannot simply disregard the explicit context of these sub-paragraphs. Paragraph 12iii does not merely observe that HISL sales had slowed to a standstill in the period 1998–2000; it unequivocally suggests that defendants affirmatively *decided* to stop selling new HISL franchises, a proposition that is not only unsupported, but clearly contradicted, by the very evidence plaintiff cites, as well as other evidence before the court. Consequently, this paragraph is impermissibly misleading, bordering on outright misrepresentation, and merits sanction.

25

**Paragraph 12v.** The R&R concludes that plaintiff's use of the word "ostensible" in this paragraph is misleading, because it suggests a motive not apparent from the cited deposition testimony. R&R at 32. Counsel for plaintiff's counsel argues that other record evidence—which plaintiff notably failed to cite in its counterstatement—casts doubt on the credibility of that statement, and thus justifies plaintiff's use of the word. Pl.'s Sanctions Brief at 20. This court also notes that plaintiff again quotes Mr. Merkin's phrase, "kick start," despite the fact that, as discussed above, his testimony was that the "kick starting" was *already done* by this point in time. Although plaintiff's use of "ostensible" adds an argumentative dimension to what should properly be a statement of fact, the court does not believe this to be egregious enough to justify sanction.

**Paragraph 12vii.** Defendants took issue with this paragraph in Exhibit 25 to their Reply, arguing that it was untrue, and that the supporting evidence cited by plaintiff—Exhibit 17 to the opposition, another email exchange between Ms. Schulwolf and Mr. Chandler—merely reflects Ms. Schulwolf "pondering whether a name change was in order" for HISL. Reply Ex. 25 at 3; see also Opp'n Ex. 17. The R&R summarily characterizes this paragraph as misleading. R&R at 32. Counsel for plaintiff's counsel argues its own interpretation of the cited evidence. Pl.'s Sanctions Brief at 20.

The court cannot resolve this particular dispute without explicit reference to the relevant text. Ms. Schulwolf wrote:

> Regardless, we can't ignore the opportunity with the midscale business/meeting's [sic] market, but it seems to make more sense to address this opportunity through introducing a new product/brand (X by Holiday Inn)-- the P&G way. Holiday Inn Select was supposed to be that offering, but we've executed poorly against that strategy (from branding to marketing) and have muddied the waters by not

26

focusing strictly on "business."  We have the advantage of strong
presence/distribution that some of the new entrants into the market place are
hungry for and are targeting our hotels to get.  Currently, we have almost 200
hotels that fit the criteria (location, QP's [*i.e.*, "Quality Performer" hotels], etc.) of
a "business hotel."  I've attached a copy of a financial model that shows what we
can expect from converting our Urban, Suburban and Airport QP hotels (no
exterior corridors, and 150+ rooms) to HISL(for [sic] lack of a better name)
hotels.

Opp'n Ex. 17 at D-0023244.

Although this section of Ms. Schulwolf's email admittedly makes reference to the

concept of "introducing a new product/brand" that HISL "was supposed to be," the rest of the

section makes unequivocally clear that Ms. Schulwolf was not in any way "considering launching

a separate hotel" that would rival or supplant HISL, as plaintiff claims.  See Opp'n at 8.  Instead,

as defendants explained, she was merely considering a possible name change for the *existing*

HISL brand in conjunction with a *large-scale expansion* of the number of HISL hotels, which she

thought could perhaps be achieved by converting many high-quality regular Holiday Inn hotels to

HISL hotels.  Consequently, plaintiff's contention in paragraph 12vii is not merely unsupported,

but in fact directly contradicted, by Exhibit 17.  It is, at the very least, highly misleading, and this

court believes it merits sanction.

**Paragraph 12viii.**  The R&R concluded that plaintiff's characterization of HISL as

"dead" is both unsupported by the cited evidence (Exhibit 16 to the opposition) and misleading.

R&R at 32.  Counsel for plaintiff's counsel argues that Exhibit 7 to its opposition—notably not

cited by plaintiff's counsel in the opposition itself—supports its use of the "death metaphor" with

respect to HISL.  Pl.'s Sanctions Brief at 21.

There are problems both with this paragraph and the further arguments in support of it. First, as discussed above, Exhibit 16 merely reflects Mr. Chandler's perspective that HISL is simply a type of Holiday Inn hotel, not a separate brand that defendants intended to break off entirely from Holiday Inn at some future point. It in no way suggests that HISL was "dead," a contention that is utterly contradicted by the record evidence in this case. Plaintiff fares no better with its reliance on Exhibit 7, for several reasons. Perhaps the most obvious reason is that Exhibit 7, which admittedly discusses the *prospective option* of letting HISL "die" and "harvesting" HISL hotels back into the core Holiday Inn brand, is a *September 2002 document.* Paragraph 12 and its sub-paragraphs purport to describe alleged decisions made by defendants *in 1998 and 1999,* before plaintiff agreed to open its hotel under the HISL name. Exhibit 7 in no way supports the contention of paragraph 12viii. Consequently, this court agrees with the R&R that it is unsupported and misleading, and further believes that it merits sanction.

**Paragraph 16.** The R&R determined that this paragraph's claim that Mr. "Chandler proposed taking the marketing dollars paid by the HISL franchisees and secretly diverting these dollars to the core Holiday Inn brand rather than to HISL advertising" was unsupported. R&R at 32. Although this particular sentence is not followed by any citation to record evidence—itself a violation of the Local Rules of this court—the overall context and plaintiff's claim that Mr. Chandler explicitly "proposed" this course of action lead the reader to believe that it is supported by the email from Mr. Chandler cited by the immediately preceding sentence and paragraph: Exhibit 16 to the opposition. See Opp'n at 8. Needless to say, neither this document nor any other of which the court has been made aware supports any "proposal" by Mr. Chandler to "secretly divert" HISL franchisees' marketing contributions. Counsel for plaintiff's counsel

advances the argument that defendants' use of HISL franchisees' marketing contributions for

non-HISL-specific marketing activities—which, as discussed above, is explicitly authorized by

the plain terms of the License Agreement—was "secret" because Exhibit 16 was "a private email

between Mr. Chandler and Ms. Schulwolf (Direct [sic] of Select Marketing) and not addressed to

franchisees." Pl.'s Sanctions Brief at 22. This argument is without merit, and verges on

frivolity. Likewise, citations to generalized testimony by plaintiff's principals to the effect that

they were "kept in the dark" about defendants' lack of HISL-specific marketing in no way

supports the very specific contention of paragraph 16 that Mr. Chandler personally "proposed . . .

secretly diverting" HISL marketing contributions. The court agrees with the R&R that this

sentence of paragraph 16 has no factual basis whatsoever, and further concludes that it merits

sanction.

  **Paragraph 19.** The R&R concluded that the claim in this paragraph's first sentence that

"[l]ater in 1998, Ms. Schulwolf recognized that the HISL brand was dead" is argument,

unsupported, and misleading. R&R at 32. The remainder of paragraph 19 essentially reiterates

the claims of paragraph 12vii, citing the same document (Exhibit 17 to the opposition), and the

argument of counsel for plaintiff's counsel in defense of this paragraph simply explains the

reliance on Exhibit 17. See Pl.'s Sanctions Brief at 22–23. The court has already discussed

above why plaintiff's claims of HISL's "death" and defendants' consideration of "launching a

separate hotel in HISL's previous market niche" are unsupported, misleading, and sanctionable,

and need not reiterate that analysis here. The court agrees with the R&R with respect to

paragraph 19, but since this court has already sanctioned plaintiff's counsel above for the flawed

assertions that form the substance of this paragraph, the court will not separately sanction plaintiff here.

**Paragraph 20.** The R&R found the first sentence of this paragraph to constitute an outright misrepresentation of the actual content of Mr. Chandler's email in Exhibit 17 to the opposition. See R&R at 32. Counsel for plaintiff's counsel cross-references Mr. Chandler's email correspondence from several months earlier (Exhibit 16 to the opposition), which was not cited in this paragraph of the counterstatement, as well as Exhibit 7, which, as the court noted above, is a 2002 document that has no relevance whatsoever to allegations about the state of affairs in 1998. See Pl.'s Sanctions Brief at 23–24. Neither of these documents supports the first sentence of paragraph 20. In light of the fact that this paragraph does not merely characterize the evidence, but specifically claims that "Mr. Chandler stated" things that he, in fact, did not state, this court agrees with the R&R that paragraph 20 constitutes a misrepresentation, and concludes that it merits sanction.

**Paragraph 21.** Defendants characterized this paragraph as false in Exhibit 25 to their reply, reiterating that "there was no decision 'to kill' HISL" for Mr. Chandler to "implement," and further explaining that although Ms. Schulwolf's nominal job title did, in fact, change in connection with a general corporate reorganization, she explained in her deposition testimony that her duties remained essentially the same, with a continued "heavy focus on" HISL, both by her and her subordinate employees. Reply Ex. 25 at 4 (quoting Reply Ex. 4 at 64:10–65:1). The R&R indicated that the first sentence of this paragraph is argument and unsupported, and noted that the second sentence is not supported by the cited evidence. See R&R at 33. Counsel for

plaintiff's counsel explains that the first sentence is merely transitional in nature, and argues that the second sentence is, in fact, supported by the cited evidence. Pl.'s Sanctions Brief at 24.

The first sentence cannot merely be dismissed as transitional in nature. It characterizes Mr. Chandler as affirmatively "implementing" actions "to kill HISL." Opp'n at 10. It is a substantive assertion; the second sentence of the paragraph merely purports to be one example of an action supporting that assertion. Indeed, it casts the second sentence regarding Ms. Schulwolf's job title change—which, in the absence of the first sentence, might be regarded as technically accurate—in an entirely misleading light that is both unsupported by the cited evidence *and* flatly contradicted by Ms. Schulwolf's deposition testimony on the topic. The court notes that this paragraph was even more misleading before plaintiff corrected its false quotation from the cited evidence; Mr. Chandler's email merely referred to Ms. Schulwolf's "role," not to any "*new* role" held by her. In any case, although the court agrees with the R&R with respect to this paragraph, the first sentence essentially reiterates flawed concepts for which plaintiff has already been sanctioned and, as noted above, the second paragraph might be regarded, on its own, as technically accurate. Consequently, this court does not believe this paragraph merits separate sanction.

**Paragraph 22.** Defendants claimed that this paragraph was misleading in their Reply, explaining that the cited document (Opp'n Ex. 7) was a historical narrative created by Michelle Mulcahey, the HISL brand manager from 2001 through 2003, who was not yet with the company during the time period relevant to these assertions (1998–99). See Reply Ex. 25 at 4. Defendants also take issue with plaintiff's quotation of the phrase "[c]ontinued implementation of 1998 plans" to refer to the alleged plans to "kill" HISL, when, in fact, the phrase explicitly referred to

31

defendants' 1998 plans to promote HISL's positioning as a high quality, business traveler-focused offering. Id. The R&R echoed defendants' concerns with respect to the latter issue, finding the second sentence of this paragraph to be misleading and unsupported by the cited evidence. See R&R at 33.

Counsel for plaintiff's counsel argues that the summary judgment standard precludes this court from reading the two relevant (and sequential) entries of Ms. Mulcahey's historical timeline (see Opp'n Ex. 7 at D-0019097) in light of each other, and instead requires the court to read the phrase "[c]ontinued implementation of 1998 plans" in the latter entry to refer not to the "Associated Activities and Plans" of the immediately preceding entry for 1998, but instead to a purported secret "strategy shift" reflected in a 1998 email between Mr. Chandler and Ms. Schulwolf, before Ms. Mulcahey was even with the company.  Pl.'s Sanctions Brief at 25–26 (citing Opp'n Ex. 16).  This argument is utterly absurd.  Although it is certainly true that "the facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party"—Smith v. Va. Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996) (*en banc*)—it is equally true that a court is "well within its discretion in refusing to ferret out the facts that counsel has not bothered to excavate." Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 396 (4th Cir. 1994).  Even assuming *arguendo* that Exhibit 16 actually reflects such a strategy shift—a contention that the court has repeatedly rejected in its analysis above—counsel for plaintiff's counsel does not direct the court's attention to any evidence suggesting that Ms. Mulcahey was even aware of the existence of Exhibit 16, let alone any evidence that would remotely suggest that her historical timeline somehow referred or related to that exhibit in any way.

32

The court agrees with the R&R that this paragraph's explicit contention that the dismantling of HISL's dedicated brand and services team "represented the 'continued implementation of 1998 plans'" is misleading and contradicted by the plain text of Exhibit 17 itself. If anything, the exhibit characterizes that dismantling as part and parcel of the "marketing personnel transition year" that began in "[l]ate [fiscal] 1999." Opp'n Ex. 7 at D-0019097. In any case, paragraph 22 is unsupported and impermissibly misleading, and merits sanction.

**Paragraph 26.** The R&R found this paragraph to be misleading because it "plays fast and loose with the budget numbers" discussed therein. R&R at 33. Counsel for plaintiff's counsel argues, *inter alia*, that all of the numbers in that paragraph are derived from defendants' own data. Moreover, since defendants have not adequately explained the discrepancy between the $300,000 figure defendants provided in their interrogatory responses—see Opp'n Ex. 20 at 4—for the fiscal year 2001 HISL budget and the much higher figures reflected in defendants' documents—see Opp'n Ex. 22 at D-0018459—plaintiff cannot be criticized for "not comparing apples to apples." Pl.'s Sanctions Brief at 27. In the apparent absence of other evidence clarifying these numerical discrepancies, this court agrees with the argument of counsel for plaintiff's counsel in this regard, and does not find fault in paragraph 26 in this respect.

**Paragraph 27.** The R&R characterized this paragraph, which effectively reiterates the allegations of paragraph 9, as unsupported and misleading. See R&R at 27. Counsel for plaintiff's counsel reiterates essentially the same arguments as those made in support of paragraph 9, showing the numbers and mathematics that led to its 90% cut figure. See Pl.'s Sanctions Brief at 28–29.

This court agrees with the R&R's conclusions for the same reasons as those discussed above with respect to paragraph 9. Since this paragraph, like paragraph 9, does not constitute an outright misrepresentation, *per se*, but instead is based on a faulty "apples to oranges" comparison using numbers from defendants' documents, this court does not deem paragraph 27 to rise to a level meriting sanction.

**Paragraph 33.** The R&R found the first sentence of this paragraph to be nothing more than impermissible argument that is unsupported by the cited evidence (Exhibit 16 to plaintiff's opposition). See R&R at 33. Counsel for plaintiff's counsel argues that the sentence is mere summarization, and is supported by Exhibit 16, as well as by Exhibit 7 and (uncited) deposition testimony. See Pl.'s Sanctions Brief at 30. However, as noted above with respect to paragraphs 12viii and 20 of plaintiff's counterstatement, Exhibit 7 is a 2002 document that does not support plaintiff's proposition that Exhibit 16, a 1998 email exchange between Mr. Chandler and Ms. Schulwolf, reflected a prior or contemporaneous "decision to kill HISL." Although plaintiff's description of defendants' strategy with respect to HISL appears to be fairly drawn from Exhibit 16, the initial clause of paragraph 33's first sentence, which describes that strategy as the motivation behind the alleged "decision to kill HISL," is not supported by Exhibit 16, at all. Consequently, the court agrees with the R&R that this paragraph is, to that extent, unsupported and impermissible argument. However, since this court has already sanctioned plaintiff above for substantially the same allegations regarding the alleged "decision to kill HISL," the court will not impose a separate sanction for this paragraph.

**Paragraph 35.** The R&R indicates that "[t]his paragraph, on its own, merits consideration for sanction," because it consists entirely of unsupported, misleading argument,

and contains no statements of fact or citations to record evidence whatsoever. R&R at 33. Consequently, the R&R characterizes it as "inflammatory" and an outright "misrepresentation of material fact." Id. Counsel for plaintiff's counsel argues that this paragraph is merely a summarization of the preceding five paragraphs, and is supported by the evidence cited in those paragraphs. Pl.'s Sanctions Brief at 31–33. Defendants express their agreement with the R&R, and rejoin that it is not the duty of the court to scour the record for support for this paragraph (i.e., essentially doing plaintiff's job for it), and that plaintiff's reliance on its own expert's report is circular, because plaintiff's expert merely reiterates the flawed, unsupported arguments made by plaintiff's counsel. Defs.' Sanctions Reply at 19–20.

Once again, this court cannot dismiss paragraph 35 as mere summarization of the preceding paragraphs. Paragraphs 30–34 of the counterstatement nowhere discuss defendants' alleged fraud against HISL franchisees in executing its purported "halo" strategy. Even more significantly, as defendants note, neither this paragraph nor the preceding paragraphs describe the existence, nature, or quantity of any alleged "losses" that were "passed . . . onto HISL franchisees like Lake Wright." See id. at 19. The last sentence in paragraph 35 rehashes plaintiff's secret killing of HISL theory, but also specifically claims that defendants "sold an HISL franchise to Lake Wright" in furtherance of its alleged fraud. Based on the court's review of the record in this case, it agrees with the R&R's conclusion that most of paragraph 35 is absurd, inflammatory, and—most importantly—outright fabrication, with no basis in fact whatsoever. Consequently, the court will sanction plaintiff for this paragraph.

**Paragraph 37.** The R&R noted that "[p]laintiff does not cite a single source" for the contentions in this paragraph, and concluded on that basis that the paragraph is unsupported

35

argument. R&R at 33.  Counsel for plaintiff's counsel raises once again the argument that this

paragraph is merely transitional, and is supported by the evidence cited in the following

paragraphs 38–41.  Pl.'s Sanctions Brief at 34.  In light of the fact that these paragraphs purport

to provide examples of what plaintiff characterizes as "feigning" ongoing commitment to HISL,

this court agrees that the paragraph is transitional in nature.  Accordingly, although the court will

not accept the paragraph as disputing any of defendants' alleged undisputed facts, neither will it

impose sanction on plaintiff because of it.

    **Paragraph 39.**  The R&R found this paragraph's linkage of Ms. Schulwolf's assurances

of ongoing support for HISL to franchisees with defendants' alleged "ongoing plans to deceive

and use HISL franchisees" to be unsupported by any evidence cited by plaintiff.  See R&R at 33.

Counsel for plaintiff's counsel argues that this connection is supported by comparing the

evidence cited by this paragraph (Opp'n Ex. 27) with Ms. Schulwolf's earlier emails (Opp'n Exs.

16 & 17), neither of which is cited in this paragraph.  Pl.'s Sanctions Brief at 34–35.  This court

has already discussed above the content of Exhibits 16 and 17, noting that they in no way support

plaintiff's repeated contentions that defendants had decided to "kill" HISL in 1998.  Exhibit 27

provides no such support, either.

    The court is more concerned, however, with the manner in which the first and second

sentences of paragraph 39 operate in tandem, leading the reader to think, based on plaintiff's use

of quotation marks in both sentences, that Exhibit 27 explicitly supports the first sentence as well

as the second.  It does not.  Indeed, it tells precisely the opposite story, and explicitly notes the

various concrete HISL-specific initiatives that *demonstrate* defendants' ongoing support of HISL

at the time.  See Opp'n Ex. 27 at D-0023238 ("I feel confident that after our

November/December roadshow to all 72 Holiday Inn Select hotels and the production of our

HISL TV spot, our existing Holiday Inn Select hotels will be excited"). Although the second

sentence accurately reproduces other language from Exhibit 27, the paragraph as a whole

misrepresents the content of that exhibit. Consequently, the court agrees with the conclusion of

the R&R, and will sanction plaintiff's counsel.

     **Paragraph 42.** The R&R considered plaintiff's use of the words "pretense" and "ruse"

to be impermissible argument, and unsupported by the cited evidence. R&R at 34. Counsel for

plaintiff's counsel argues that a jury might conclude that such characterizations are appropriate.

See Pl.'s Sanctions Brief at 35–36. Although the implications of these terms are not supported in

any way by the cited evidence, it is nevertheless at least somewhat clear to the court in this

paragraph—unlike other paragraphs in plaintiff's counterstatement—which portions purport to

be cited fact and which are plaintiff's own characterizations. Accordingly, although the court

agrees with the R&R that this paragraph fails to dispute the undisputed facts alleged by

defendants, the court does not believe that the paragraph warrants sanction.

     **Paragraph 46.** Defendants claimed that this paragraph was only partially truthful, noting

that Ms. Mulcahey (the author of the cited document, Exhibit 7 to the opposition) nowhere stated

that "HISL had outlived its usefulness to the core [Holiday Inn] brand." Reply Ex. 25 at 4–5.

Defendants further argue that, even if Ms. Mulcahey did recommend allowing HISL to "die" in

this September 2002 document, any such recommendation was rejected by her superiors in favor

of renewed efforts at differentiation. Id. at 5. The R&R considered the first sentence of this

paragraph to be a misrepresentation of the content of the cited document. R&R at 34. Counsel

for plaintiff's counsel argues, quoting from the cited document, that the cited document explicitly recommends allowing HISL to "die." Pl.'s Sanctions Brief at 37 (citing Opp'n Ex. 7).

Whatever the nature of the ultimate decisions made by defendants in this connection, the court agrees with counsel for plaintiff's counsel that this document does, in fact, recommend allowing HISL to be "harvested," which the document explicitly equates with allowing HISL to "die." See Opp'n Ex. 7 at D-0019082 & D-0019086. Consequently, there is no issue with that aspect of paragraph 46. Although defendants are correct to point out that Exhibit 7 provides dubious support for plaintiff's contentions regarding Ms. Mulcahey's beliefs in connection with this recommendation, the court does not believe that aspect of this paragraph to warrant sanction.

**Paragraph 47.** Defendants raised the same issues with respect to this paragraph as they did with paragraph 46, arguing that Mr. Merkin did not characterize HISL as a "marketing device," and that any recommendation made by him that HISL should "die" was rejected by his superiors. See Reply Ex. 25 at 4–5. The R&R notes that plaintiff's quotation of Mr. Merkin's deposition testimony in the original version of its opposition was false, and that plaintiff failed to attach the pages of the deposition transcript cited in the corrected version of the opposition. R&R at 34. Counsel for plaintiff's counsel explains that the pages in question were previously submitted to the court in connection with plaintiff's motion to file a corrected opposition. Pl.'s Sanctions Brief at 38–39 (citing Supplement to Opp'n Ex. 4, Docket No. 123-3). The court has reviewed the relevant pages of the deposition transcript, and determined that plaintiff's corrected quotation is accurate. Accordingly, there is no issue with paragraph 47.

**Paragraph 53.** The R&R noted that this paragraph contains apparently false quotations. R&R at 34. With respect to the first such quotation—Ms. Schulwolf referring to HISL as

"retired"—counsel for plaintiff's counsel explains that this was a mere typographical error in the citation, and that Ms. Schulwolf did, in fact, use the word "retired" in describing HISL on another page of her deposition testimony submitted by plaintiff in connection with its motion to file a corrected opposition brief. See Pl.'s Sanctions Brief at 39 (citing Supplement to Opp'n Ex. 8, Docket No. 123-3). This resolves the issue of the first apparent false quotation.

With respect to the second such quotation, counsel for plaintiff's counsel argues that it is fairly supported by the cited deposition testimony of Holiday Inn executive Mark Wells. See Pl.'s Sanctions Brief at 39–40. The relevant testimony reads as follows:

> Q.    I just want to write -- you said all hotel brands evolve over time, right?
>
> A.    Uh-huh.
>
> Q.    And some become extinct, right?
>
> A.    Some do.
>
> Q.    Would you say Holiday Inn Select is a brand that's become extinct?
>
> A.    It is becoming retired over a period of time because the needs that it once
>        fulfilled were being fulfilled in a different way.

Opp'n Ex. 5 at 57:5–14. Although Mr. Wells acknowledged that "some" hotel brands become extinct, when asked specifically about HISL, he rebuffed counsel's use of the word "extinct," instead using the word "retired" in his answer. Accordingly, imputing to Mr. Wells the explicit use of *both* terms, especially in a paragraph purporting to provide concrete examples, in quotation marks, of defendants' alleged doublespeak with respect to the status of HISL, constitutes an affirmative misrepresentation, for which the court will impose a sanction.

**Paragraph 56.** The R&R found this paragraph to be misleading to the extent that it

purported to attribute the allegation of defendants "punishing" HISL franchisees for remaining

HISL hotels to the testimony of Holiday Inn executive Al Reingold. R&R at 34. Counsel for

plaintiff's counsel argues that Mr. Reingold's testimony is only cited for the proposition that

defendants "encouraged" HISL franchisees to convert their hotels, and that, *inter alia*, Exhibit 38

to the opposition—notably not cited by this paragraph—"shows an example of punishment or

detriment to franchisees for choosing to remain a Select." Pl.'s Sanctions Brief at 40. As

discussed below with respect to paragraph 57, Exhibit 38 shows no such example. No other

evidence is cited for this alleged "punishment." Moreover, the last sentence of this paragraph

does not merely state that it is detrimental to current HISL franchisees to continue operating their

hotels under the HISL name; instead, it claims that they are affirmatively punished *by defendants*

for doing so. This is an utterly unsupported contention, and constitutes pure argument, or even

outright misrepresentation. Consequently, the court agrees with the conclusion of the R&R with

respect to this paragraph, and further believes that it merits sanction.

**Paragraph 57.** The R&R characterizes this paragraph as misleading, because it suggests

that HISL franchisees were given an either-or ultimatum to leave or convert, when, in fact, HISL

franchisees also had the option simply to continue to operate their hotels under the HISL brand

name. R&R at 34. As noted above with respect to paragraph 57, counsel for plaintiff's counsel

argues that Exhibit 38 to the opposition supports this paragraph. Pl.'s Sanctions Brief at 40–41.

Defendants respond that the R&R was correct to conclude that the paragraph is misleading, and

echoes the R&R's recommendation of sanctions. Defs.' Sanctions Reply at 20.

40

Exhibit 38 simply does not support this paragraph.  It merely requests that HISL

franchisees confirm whether they intend to continue operating their hotels under the HISL name

or plan to convert their hotels to regular Holiday Inns, so that measures can be taken for them to

qualify for free signage changes.  Nowhere does Exhibit 38 evidence or even remotely suggest

any pressure on HISL franchisees to leave the Holiday Inn system.  Nowhere does it suggest that

franchisees would have to pay more money to convert to a regular Holiday Inn—indeed, its very

purpose is to facilitate franchisees receiving new signage, at no charge, from defendants, and to

inform franchisees of defendants' voluntary waiver of its "customary $5,000 brand change fee."

Opp'n Ex. 38 at D-0017582.  This court agrees with the R&R that this paragraph is misleading,

and because the court further concludes that the paragraph utterly misrepresents the plain content

of Exhibit 38, the court will impose sanction for it.

   **Paragraph 58.**  The R&R takes issue with this paragraph's unsupported claim that an

allegedly denigrating statement by Peter Gowers, at the time one of defendants' senior

executives, "'decreased the value of existing HISL hotels.'"  R&R at 34 (quoting Opp'n at 17).

Counsel for plaintiff's counsel merely reiterates this claim, citing Exhibit 43 to the opposition, a

complaint by another HISL franchisee that, *inter alia*, "'[t]he dissolving of the brand could

potentially lower the value of the asset.'"  Pl.'s Sanctions Brief at 41 (quoting Opp'n Ex. 43 at D-

0020551).  However, beyond the fact that plaintiff's counsel failed to cite to this document, or

any other evidence, in this paragraph, this citation is, in and of itself, misleading.  Nowhere is it

suggested in Exhibit 43 that its author was referring to, or even aware of, the aforementioned

statement by Mr. Gowers in his discussion of "actions" by defendants that have "impacted" his

hotel's "profitability."  See Opp'n Ex. 43 at D-0020551.  This court agrees with the R&R and

defendants—see Defs.' Sanctions Reply at 20–21—that this sentence is pure, unsupported argument, and has no place in a purported statement of facts. In light of the fact that neither plaintiff's counsel nor counsel for plaintiff's counsel have been able to cite to any record evidence actually supporting this proposition, but instead provided a citation that is itself misleading, this court also believes that this paragraph merits sanction.

   **Paragraph 67.** The R&R concluded that this paragraph consisted entirely of argument that enjoyed little, if any, support from the evidence it cites. See R&R at 34. It also found plaintiff's characterization of the purported "HISL sales points" as "deceptive and fail[ing] to reveal the truth" to be unsupported. Id. Counsel for plaintiff's counsel argues how the contents of the cited evidence, Exhibit 7 to the opposition, correspond to alleged statements by Messrs. Bush and Horgan to plaintiff's principals, and cites additional support. Pl.'s Sanctions Brief at 42–43. Defendants reply that plaintiff intentionally gives the impression that the alleged "sales points" contained in Exhibit 7 were contemporaneous with the conversations between plaintiff's principals and Messrs. Bush and Horgan, when, in fact, Exhibit 7 is dated September 2002, approximately two years after those conversations were alleged to have taken place. See Defs.' Sanctions Reply at 21–22.

   This court agrees with the R&R and defendants that it is highly questionable to characterize Exhibit 7, a September 2002 document prepared by a relative newcomer to Holiday Inn, as somehow reflecting a "script" of "sales points" purportedly used by Messrs. Bush and Horgan approximately two years earlier. However, above and beyond that dubious characterization, plaintiff's further description of these purported "sales points" as "deceptive" and untruthful takes this paragraph from the realm of the fanciful into the realm of the fabricated.

The court agrees with the R&R and defendants that this paragraph is impermissible, unsupported argument, and further concludes that it is sanctionable.

**Paragraph 68.** The R&R states that, in this paragraph, "[p]laintiff improperly cobbles together quotations into a misleading 'acknowledgment' of implementing a secret plan of wrongdoing." R&R at 35. Counsel for plaintiff's counsel claims that the cited evidence, Exhibit 7 to the opposition, supports the paragraph. Pl.'s Sanctions Brief at 43–44. The court agrees entirely with the R&R, and finds this to be one of the most egregious examples of plaintiff's counsel selectively quoting words out of context from an entirely innocuous document to support its contentions. The relevant portion of Exhibit 7 is a "Summary of Key Issues" facing HISL, in which Ms. Mulcahey, the author of the document, discussed why the "[s]tatus quo operations" were "not acceptable." Ms. Mulcahey explained that although "[e]xpectations were built in the early days" of HISL, HISL franchisees were, at the time that document was written (*i.e.*, September 2002), "question[ing] our commitment to truly building a brand around HISL." Opp'n Ex. 7 at D-0019073. Ms. Mulcahey noted that "[w]ithout satisfactory answers to the 'where are we taking HISL' question, owner defection is a risk," but that "[a]ny plan we define will be met with skepticism because our credibility is limited." Id. This document in no way evidences any acknowledgment by defendants of the doublespeak alleged by plaintiff in this paragraph, which the court finds to be an outright misrepresentation for which sanction is appropriate.

**Paragraphs 75–76.** The R&R treated these paragraphs together, concluding that they both consist of little more than argument of legal conclusions and unsupported attempts to controvert material facts. See R&R at 35. The R&R also explicitly notes that these paragraphs,

43

in particular, merit sanctions. Id. Counsel for plaintiff's counsel argues that these paragraphs must be read in the context of the immediately preceding paragraphs 69–74, and are supported by the sole reference to Exhibit 70 to its opposition (defendants' 2007 UFOC). Pl.'s Sanctions Brief at 44–45. Defendants rejoin that the R&R was correct in characterizing these paragraphs as unsupported argument, and further note that the deletion of HISL from defendants' UFOC in 2007 followed naturally from defendants' decision in 2006 to cease sales of new HISL franchises. Defs.' Sanctions Reply at 23. This court agrees with the R&R and defendants that these paragraphs consist almost exclusively of argument, and are therefore misplaced in the counterstatement, but the court does not believe that they merit separate sanctions.

**Paragraph 79.** The R&R found this paragraph to be similar to paragraphs 75 and 76, in that it posited legal argument as fact, reiterating many of the baseless themes raised in earlier paragraphs. See R&R at 35. Counsel for plaintiff's counsel claims that the paragraph is an appropriate summary of foregoing paragraphs, and that its statement about plaintiff's "reasonable belief" of defendants is supported by the cited deposition testimony of its principals. Pl.'s Sanctions Brief at 45–46. This court agrees with the conclusion of the R&R that this paragraph consists primarily of misplaced argument. Since the aforementioned baseless themes strung together in this paragraph—notably without any citation—have already been the subject of sanctions imposed with respect to previous paragraphs, this court will not separately sanction plaintiff for this paragraph.

**Paragraph 80.** The R&R takes issue with plaintiff's materially misleading substitution of "HISL" for "the System" in discussing section 4(D) of the License Agreement, indicating that it constitutes a misrepresentation specifically warranting consideration of sanction. R&R at 35.

44

Counsel for plaintiff's counsel explains that the substitution "is not misleading because the 'System' includes 'Holiday Inn Select'" and claims that additional language in the License Agreement and deposition testimony from Mr. Wells support plaintiff's interpretation that it is "mandatory" under the License Agreement for defendants to spend HISL marketing contributions on HISL-specific marketing activites. Pl.'s Sanctions Brief at 46–49. Defendants echo the R&R in characterizing this paragraph as an outright misrepresentation warranting sanctions. Defs.' Sanctions Reply at 24–25.

Although, as discussed in detail above, plaintiff's interpretation is clearly wrong under the plain language of the License Agreement—*i.e.*, defendants were explicitly *not* obligated contractually to spend any portion of the marketing contributions they received from HISL franchisees on HISL-specific marketing—the court acknowledges that the deposition testimony cited by plaintiff in this connection provides some basis for plaintiff's interpretation, however irrelevant that evidence might be to the court's interpretation of the plain meaning of the License Agreement's terms. Consequently, the court does not believe that this paragraph merits sanction.

**Paragraph 82.** The R&R's critique of this paragraph is similar to that of paragraph 80 of the counterstatement, in that both paragraphs attempt to insert plaintiff's own words into the plain language of the License Agreement to create the impression of obligations that explicitly do not exist under the License Agreement. R&R at 35–36. Counsel for plaintiff's counsel simply reiterates that the cited testimony supports this paragraph's assertions. Pl.'s Sanctions Brief at 49–50.

This court agrees with the R&R with respect to this paragraph. The License Agreement does not anywhere require HISL-specific training, making the first and second sentences of this

45

paragraph disingenuous, at best. More disturbingly, the deponent whose transcript is cited by plaintiff in support of this contention explicitly admitted there to be no such explicit requirement in the License Agreement.

> Q    Okay. Now, would you agree with me after seeing Lake Wright Number 19, that the licensor met its responsibility to continue to specify required and optional training services?
>
> A    No.
>
> Q    And why is that?
>
> A    Because the training, it should be specified, should be as it relates to Holiday Inn Select.
>
> Q    Okay. Where does that say that in the agreement? Let's look at Paragraph A. Where does it say the training has to be Holiday Inn specific?
>
> A    *It does not say that,* but again, if you take the entire agreement which is licensed for a Holiday Inn Select then to me it's obvious that this is in relation to Holiday Inn Select.

Opp'n Ex. 50 at 86:1–15 (emphasis added). In light of this, the court believes that a sanction is appropriate for this paragraph.

**Paragraph 87.** Defendants argued in response to plaintiff's opposition that this paragraph "[d]istorted facts." Reply Ex. 25 at 6. The R&R concluded that certain portions of this paragraph are unsupported by the cited evidence, and that the last sentence is impermissible argument. See R&R at 36. Counsel for plaintiff's counsel argues that the paragraph is supported. See Pl.'s Sanctions Brief at 50–51.

The court notes at the outset that plaintiff's citation to Mr. Horgan's deposition transcript appears to contain a typographical error, and should extend to line 14 of page 109 instead of page

108. See Opp'n Ex. 48. Plaintiff's citation to this testimony is also misleading, because Mr.

Horgan was asked directly why defendants rejected the Holiday Inn Express franchisee in 2006:

> Q.      . . . Are you saying that Mr. Patel applied before and was turned down?
>
> A.      I think the -- I think the answer there is I think he had discussed with us as
>         the potential for the Express and that goes back a way and at that particular
>         time our opinion was, well, I don't know if we want to really pursue that
>         deal today.
>
> Q.      Do you remember why that was?
>
> A.      Speculation on my part but over time we have come more focused with
>         distribution share. And at one point in time, we weren't. It has become
>         more cognizant of distribution share. We would look at this differently
>         than we would have, like, five or six years earlier, if that makes any sense.

Opp'n Ex. 48 at 107:17–108:5. Nowhere in Mr. Horgan's testimony is it suggested that

defendants' 2006 rejection was "due to the impact on Lake Wright." In a similar vein, the court

also notes that Exhibit 41 to the opposition in no way suggests that defendants "were now

committed to growing the Express brand at the expense of the dissolved Select brand." In the

absence of reference to any other evidence supporting these contentions, they appear to be utter

fabrications, which merit sanction.

Paragraph 88. Defendants characterized this paragraph as "misleading" in their Reply.

Reply Ex. 25 at 6. The R&R indicated that plaintiff's assertion that "[u]nder Defendants' policy,

if impact is too high, the project cannot be approved" is unsupported by the cited deposition

testimony. Counsel for plaintiff's counsel argues that the paragraph is supported, because the

deposition testimony indicates "that 'impact,' besides being a 'factor,' can become so high that it

is dispositive." Pl.'s Sanctions Brief at 53. This court notes, however, that this reformulation

has far weaker implications than the bold assertion that actually appears in plaintiff's

47

counterstatement. Defendants rejoin that the R&R is correct in its finding that the last sentence is unsupported by the cited evidence, and argues that sanction is appropriate. Defs.' Sanctions Reply at 25–26.

This court agrees with the R&R and defendants that the evidence plaintiff cited in this paragraph does not support the paragraph's last sentence. As defendants point out, in the cited portion of plaintiff's expert Theodore Mandigo's deposition, Mr. Mandigo is not testifying about defendants' policy, but instead about general *industry* practices that he has discerned from his studies of *other* hotel chains. See Defs.' Sanctions Reply at 25; Opp'n Ex. 55 at 84:2–85:12. This testimony does not refer to defendants' policy or practice. Likewise, it is explicit in the cited testimony of Holiday Inn executive Lester Adams that the impact study is merely one factor in deciding whether to approve a new franchise, and is not, by itself, dispositive. See Opp'n Ex. 56 at 66:2–69:11. The court thus concludes that this paragraph merits sanction.

**Paragraph 90.** The R&R concluded that this paragraph contained unsupported argument and was, overall, misleading. R&R at 36. Counsel for plaintiff's counsel reiterates its arguments in support of paragraph 87, which makes substantially the same assertions. Pl.'s Sanctions Brief at 53–54. The first sentence of this paragraph is flawed for the same reasons as those articulated above by this court in connection with paragraph 87.

However, the court notes with respect to the second sentence that Mr. Horgan, whose deposition transcript is the only source cited in this paragraph, never used the words "policy change" in the cited testimony, even though that phrase appears, along with other phrases actually drawn from that cited testimony, in quotation marks. See Opp'n Ex. 48 at 104–11. The court also notes that the last sentence of the paragraph is not supported by the cited testimony,

either.  Plaintiff claims that, after rejecting the 2006 application for a new Holiday Inn Express

franchise in Norfolk, "[d]efendants adopted" a "new policy" that motivated their 2007 approval

of the new Holiday Inn Express "in the aftermath of their formal announcement regarding HISL."

Opp'n at 25.  This contention, however, is nonsensical, because *both* the initial rejection, which

occurred in "mid 2006"—see Opp'n Ex. 48 at 107:11–12—*and* the subsequent approval in 2007

occurred *after* defendants' March 2006 announcement that they were ceasing sales of new HISL

franchises.  To the extent that this paragraph reiterates the faulty contentions of paragraph 87,

this court does not think additional sanction is appropriate.  However, in light of the further

issues discussed above in this paragraph, the court believes sanction is appropriate.

**Paragraph 93.**  The R&R found that the second sentence of this paragraph was not only

unsupported, but also contradicted, by the cited deposition testimony.  R&R at 36.  Counsel for

plaintiff's counsel simply reiterates its arguments in support of paragraph 88, which makes

essentially the same assertions as this paragraph.  Pl.'s Sanctions Brief at 54.  This court notes

that plaintiff cites additional sources in paragraph 93 that were not cited in paragraph 88.

However, these sources do not support paragraph 93's contention that new franchises "cannot"

be approved if the "adverse impact to the existing franchisees is too high."  Opp'n at 25.  Since

this court has already sanctioned plaintiff above for these unsupported assertions, the court will

not separately sanction plaintiff here, despite plaintiff's additional faulty citations.

**Paragraph 94.**  Defendants characterized this paragraph as "false" in Exhibit 25 to their

Reply.  See Reply Ex. 25 at 6.  The R&R noted that "Plaintiff improperly extrapolates a bounty

of 'fact' from three ambiguous lines of deposition testimony," and concluded that the paragraph

is unsupported.  R&R at 36.  Counsel for plaintiff's counsel refers the court to the following

paragraph of the counterstatement as providing additional support. Pl.'s Sanctions Brief at 55. Defendants rejoin that the cited testimony says nothing more than that Kirk Kinsell, formerly an executive with defendants, is reliable, and has nothing to do with the requirements of defendants' franchisee impact policy.

The court agrees with the R&R and defendants that the cited deposition testimony, even in light of paragraph 95, in no way even remotely supports the substance of paragraph 94, which is, in any case, argument regarding a purely legal conclusion. The court believes that this misrepresentation is brazen and baseless enough to merit sanction.

**Paragraph 95.** The R&R found with respect to this paragraph that "Plaintiff used selective quotations to create a <u>misleading</u> 'fact,'" representing as mandatory courses of action by defendants that are, in fact, expressly discretionary. R&R at 36. Counsel for plaintiff's counsel argues that the evidence cited here and elsewhere in the counterstatement supports the proposition that defendants do not have unfettered discretion with respect to their impact policy. Pl.'s Sanctions Brief at 56. This court agrees with the R&R that this paragraph is misleading and unsupported by the cited evidence, which does not suggest that defendants are in any way *required* to provide remuneration or reject applications for new franchises when impact is above a certain threshold. However, since the court has already sanctioned plaintiff for this faulty proposition above, the court will not impose separate sanction for this paragraph, despite plaintiff's selective quotations.

**Paragraph 102.** The R&R found this paragraph to be unsupported by the cited evidence and to contain selective, misleading quotations. R&R at 36. Counsel for plaintiff's counsel explains that the cited documents demonstrate that any decision with respect to merging the core

50

Holiday Inn brand with HISL or Holiday Inn Express had to be made by defendants' Executive Committee. Although this court certainly finds nothing in the cited evidence to support plaintiff's inflammatory characterization of decisions by defendants as "orchestrat[ions]" of a "final scam to test run Gen-X initiatives" using HISL hotels, the court agrees with plaintiff that the cited documents provide some basis for a belief that some decision-making authority with respect to HISL lay with defendants' Executive Committee. Accordingly, the court does not believe that this paragraph, taken as a whole, merits sanction.

### C.    *Imposition of Sanctions*

This court cannot disregard the conduct of plaintiff's counsel. Consequently, this court will impose on plaintiff's counsel an appropriate sanction in the court's final Order and Judgment, which, as detailed below, shall issue after the parties have addressed the amount of the attorney's fee award to defendants.

## III.    Other Pending Motions

In reaching a conclusion as to the merit of defendants' motion for summary judgment, the R&R also had to address several other pending motions, including plaintiff's Motion to Strike Summary Judgment Reply or, in the Alternative, for Permission to File Surreply, which the R&R denied, and defendants' Motion and Incorporated Memorandum to Preclude Plaintiff from Using Depositions Taken in Violation of Court Order, which the R&R granted in part, to the extent that Messrs. Wells and Kowaleski were questioned in their individual capacities in the course of depositions taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. See R&R at 8–9. This court agrees with the analysis and conclusions of the R&R with respect to these motions. The R&R reserved ruling on defendants' Motion to Strike Expert Reports and

51

Testimony Regarding Impact Damages (Docket No. 55) and Motion to Strike Plaintiff's Damage Experts (Docket No. 93) in light of its recommendation to grant defendants' motion for summary judgment, which would obviate the need to address those motions. This court's acceptance of the R&R renders them, as well as all other motions still pending in this case, moot.

### CONCLUSION

The court has thoroughly reviewed the R&R, the parties' objections thereto, the parties' respective responses to those objections, the portions of the extensive record of this case relevant to the objections and responses, including the parties' briefing of defendants' motion for summary judgment before Magistrate Judge Miller, and the parties' submissions on the issue of sanctions against plaintiff's counsel. Having conducted a *de novo* review of all portions of the R&R to which the parties object, and in light of the record of the case as a whole, the court finds, for the reasons stated in the R&R, that summary judgment in defendants' favor is appropriate. In light of this conclusion, the court need not address defendants' objections with regard to their statute of limitations, merger clause, or other arguments supporting summary judgment, which defendants have quite properly preserved for any appeal that might ensue in this matter. Accordingly, plaintiff's objections to the R&R are **OVERRULED**, the findings of fact and conclusions of law of the R&R are **ACCEPTED**, plaintiff's Motion to Strike Summary Judgment Reply or, in the Alternative, for Permission to File Surreply is **DENIED**, defendants' Motion and Incorporated Memorandum to Preclude Plaintiff from Using Depositions Taken in Violation of Court Order is **GRANTED IN PART**, defendants' Motion for Summary Judgment is **GRANTED**, and all other pending motions in this case are **DENIED AS MOOT**. In light of this disposition, defendants are entitled to recover attorney's fees for their defense of this

litigation pursuant to the provisions of the parties' License Agreement.  Consequently,

defendants are hereby **ORDERED** to submit their request for attorney's fees in the form of a

motion, providing a detailed accounting of the total amount sought, no later than fourteen (14)

days after the date of this Opinion and Order.  Plaintiff shall file any response—which may only

address objections to the amount of the fees requested, not to defendants' entitlement to

them—within eleven (11) days after service of the fee request, and defendants shall file any

rebuttal within three (3) days after service of plaintiff's response.  The court will thereafter issue

a final Order and Judgment indicating the amount of the attorney's fee award to defendants,

detailing the sanction imposed on plaintiff's counsel, and dismissing this matter, with prejudice.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of

record.


It is so **ORDERED**.


_____/s/_____

Jerome B. Friedman
UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
August 20, 2009


53